1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

George Richard Baker (224003)
richard@bakerlawpc.com
**BAKER LAW, P.C.**
524 Union Street, #213
San Francisco, CA 94133
Telephone: (415) 295-4814
Facsimile: (800) 866-6556

Steven M. Sherman (164620)
steven@shermanbusinesslaw.com
**SHERMAN BUSINESS LAW**
220 Montgomery Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 403-1660
Facsimile: (415) 397-1577

Stephen Gardner (pro hac vice to be sought)
sgardner@cspinet.org
Seema Rattan (pro hac vice to be sought)
srattan@cspinet.org
**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
5646 Milton Street, Suite 211
Dallas, Texas 75206
Telephone: (214) 827-2774 ext. 381
Facsimile: (214) 827-2787
Lead counsel for Plaintiffs

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUDITH JANNEY and AMY MCKENDRICK, on behalf of themselves and those similarly situated, <br><br>     Plaintiffs, <br><br>  v. <br><br> GENERAL MILLS and DOES 1-20, <br><br>     Defendants. | Case No. C 12-3919 PJH <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> 1. **CONSUMERS LEGAL REMEDIES ACT (CAL. CIVIL CODE §§ 1750 *ET SEQ.*);** <br><br> 2. **UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*);** <br><br> 3. **FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.*);** <br><br> 4. **UNJUST ENRICHMENT** |

## INTRODUCTORY STATEMENT

1.      Plaintiffs Judith Janney and Amy McKendrick ("Plaintiffs"), individually and on behalf of those similarly situated, bring this class action against Defendant General Mills for the deceptive[1] practice of marketing its Nature Valley products as "Natural"[2] when they contain non-natural, highly processed ingredients such as high fructose corn syrup (HFCS), high maltose corn syrup (HMCS), and maltodextrin and rice maltodextrin (together, Maltodextrin).

2.      This case is about the deceptive manner in which General Mills markets its Nature Valley Natural Products[3] to the general public.

3.      The term "Natural" only applies to those products that contain no artificial or synthetic ingredients and consist entirely of ingredients that are only minimally processed. However, General Mills deceptively uses the term "Natural" to describe products containing ingredients that have been fundamentally altered from their natural state and cannot be considered "minimally processed." The use of the term "Natural" to describe such products creates consumer confusion and is deceptive. Plaintiffs allege that General Mills deceptively describes certain products as being "Natural" when, in fact, they are not.

---

[1] For the purposes of this complaint "deceptive" is defined to include the following terms from the Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.*, the Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 *et seq.*, and the False Advertising Law ("FAL"), California Business and Professions Code §§ 17500 *et seq.*: deceptive, unfair, misleading, unlawful, fraudulent, and untrue.

[2] "Natural" is defined to include any claims of "100% Natural," "All Natural," or "Natural" on a product's label or in its marketing.

[3] Nature Valley Natural Products are defined as those Nature Valley products that are described as "Natural" by General Mills and contain ingredients that have been fundamentally altered from their natural state and cannot be considered to be miminally processed.

4.     The term "Natural" is pervasive and prominent on the packaging and advertising of Nature Valley products. General Mills thoroughly reinforces the image of Nature Valley products as all-natural on Nature Valley's website and through Nature Valley's social media accounts on Twitter, Facebook, Flickr, and YouTube.

5.     The name "Nature Valley" itself directly conjures up images of naturalness.

6.     By marketing its products as "Natural," General Mills takes wrongful advantage of consumers' strong preference for foods made entirely of natural ingredients. In a survey, the most popular food label among consumers was "100% natural." "All natural ingredients" was the second most popular food label among consumers, and consumers preferred both labels to those reading "100% organic," "Certified organic ingredients," "Bio-based ingredients," and "Contains natural ingredients."[4]

7.     Consumers attribute a wide range of benefits to foods made entirely of natural ingredients. Consumers perceive all-natural foods to be higher quality, healthier, safer to eat, and less damaging to the environment.

8.     Catering to the consumer's taste for natural foods is tremendously advantageous for businesses. In 2008, foods labeled with the word "natural" produced $22.3 billion in sales, a 10% increase from 2007, and a 37% increase from 2004.[5] In 2009, sales jumped again by 4%.[6]

---

[4]     *See, e.g.*, *Consumers Prefer '100% Natural' Label Over 'Organic'*, ENVIRONMENTAL LEADER (Jul. 3, 2009), http://www.environmentalleader.com/2009/07/03/consumers-prefer-100-natural-label-over-organic (describing EcoPulse market report by Shelton Group) (last visited May 22, 2012).

[5]     *"Natural" Beats "Organic" in Food Sales According to Nielsen's Healthy Eating Report*, NIELSEN WIRE (Jan. 21, 2009), http://blog.nielsen.com/nielsenwire/consumer/"natural"-beats-"organic"-in-food-sales-according-to-nielsen's-healthy-eating-report (last visited May 22, 2012).

[6]     *U.S. Healthy Eating Trends Part 1: Commitment Trumps the Economic Pinch*, NIELSEN WIRE (Jan. 26, 2010), http://blog.nielsen.com/nielsenwire/consumer/healthy-eating-

9.      General Mills profits in this lucrative market for natural foods by dressing up its Nature Valley products as "Natural" and selling them to consumers who seek to purchase products made from ingredients that are found in nature and who are willing to pay more for such foods.

10.      However, many Nature Valley products, including those labeled "Natural," contain, or contained, substantial quantities of non-natural, highly processed ingredients such as HFCS, HMCS, and Maltodextrin.

11.      Some Nature Valley Natural Products contained HFCS until it was removed in the last few years.

12.      HFCS and HMCS are factory-produced sweeteners that are created by complex processing, and do not occur in nature.

13.      Maltodextrin is a factory-produced texturizer that is created by complex processing and does not occur in nature. It is used in processed foods as a filler and to enhance texture and flavor.

14.      Nature Valley products containing HFCS, HMCS, and Maltodextrin are not "Natural," despite the language claiming otherwise that emblazons the products' packaging. Therefore, a consumer who buys Nature Valley Natural Products expecting to receive all-natural snacks is deceived, and deprived of the benefit of his bargain.

15.      In sum, General Mills markets its Nature Valley Natural Products in a way that is deceptive to consumers, and in violation of California law. For these reasons, Plaintiffs seek the relief set forth herein.

_____

trends-pt-1-commitment-trumps-the-economic-pinch (last visited May 22, 2012).

First Amended Class Action Complaint
Case No. C 12-3919 PJH

**THE PARTIES**

16.     Plaintiff Judith Janney is a resident of Walnut Creek, California. During the Class Period, Plaintiff Janney purchased Nature Valley Chewy Trail Mix Dark Chocolate & Nut Granola Bars and Nature Valley Peanut Butter Granola Thins.

17.     Plaintiff Amy McKendrick is a resident of Kern County, California. During the Class Period, Plaintiff McKendrick purchased Nature Valley Chewy Trail Mix Fruit & Nut Granola Bars, Nature Valley Sweet & Salty Nut Cashew Granola Bars, and Nature Valley Dark Chocolate and Peanut Butter Granola Thins.

18.     Defendant General Mills, Inc. is incorporated in Delaware, and its principal place of business is located in Minneapolis, Minnesota. General Mills develops, markets, and sells food products throughout the world under various brand names. General Mills sells food products under the "Nature Valley" brand name throughout California as well as the rest of the United States.

**JURISDICTION AND VENUE**

19.     Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1332(d) because the aggregate claims of the Class exceed the sum or value of $5,000,000 and there is diversity of citizenship between proposed class members and Defendant.

20.     Venue is appropriate in the Northern District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of sales and purchases and the conduct complained of took place in this district.

**FACTUAL ALLEGATIONS**

21.     General Mills is one of the world's largest food companies,[7] producing and marketing food products in the United States and throughout the rest of the world.

---

[7]     In Fiscal Year 2011, General Mills had global net sales of $14.9 billion. GENERAL MILLS ANNUAL REPORT 2011: A PORTFOLIO FOR QUALITY GROWTH, http://phx.corporate-ir.net/External.File?item=UGFyZW50SUQ9MTAzNDQ1fENoaWxkSUQ9LTF8VHlwZT0z&t=1 (last visited June 6, 2012). . General Mills is ranked number 397 on the 2012 Forbes

5

22.   General Mills markets several products under its prominent Nature Valley brand as "Natural," such as this product purchased by Plaintiffs:



23.   Nature Valley is linked with the concept of natural on the brand's website. The Nature Valley "Products" homepage prominently features images of forests, mountains, and seaside landscapes. A caption reads, "[N]o matter how many flavors we create, you can be assured that with Nature Valley you're always getting The Taste Nature Intended."[8]

---

Magazine annual list of the world's 2000 largest companies, and number 7 on that list within the "food processing" industry. *The World's Largest Public Companies*, FORBES.COM (Apr. 18, 2012), http://www.forbes.com/global2000 (last visited May 22, 2012).

[8] Nature Valley website, Products Page, http://www.naturevalley.com/Products.aspx (last visited May 22, 2012).



24.     General Mills also links the Nature Valley brand with the concept of natural on its Flickr photostream, which includes photographs featuring people in natural settings such as deserts, forests, lakes, beaches, and mountains.[9]



25.     Nature Valley's Facebook page also features photographs of nature, including shots of wildlife, plants, lakes, and clouds.[10]

---

[9] *See* Nature Valley Flickr Homepage, http://www.flickr.com/photos/nature_valley (last visited May 22, 2012).

[10] *See* Nature Valley Facebook Homepage, https://www.facebook.com/naturevalley (last visited May 22, 2012).

26.     In a similar attempt to link the Nature Valley brand with the concept of natural, Nature Valley's YouTube channel features videos of mountain bikers riding on forest and desert trails and pausing to admire scenic vistas while snacking on granola bars; a naturalist attempting to return a Nature Valley granola bar to the wild; back country skiers at Big Cottonwood Canyon, Utah; two women hiking, camping, rock climbing, and consuming Nature Valley granola bars in Snow Canyon, Utah; a sea kayaker paddling off the coast of Maine and eating a granola bar; a hiker walking her dogs through Columbia River Gorge, Oregon; and a student photographing wildlife and sunsets at a park in Coral Gables, Florida. In the "About Me" section, Nature Valley granola bars are characterized as "The Energy Bar Nature Intended."[11]

---

[11] *See* Nature Valley YouTube Channel, http://www.youtube.com/NatureValleyTV (last visited May 22, 2012).

First Amended Class Action Complaint
Case No. C 12-3919 PJH

27.     By representing that Nature Valley products are "natural," General Mills seeks to capitalize on consumers' preference for all-natural foods and the association between such foods and a wholesome way of life. Consumers are willing to pay more for natural foods because of this association, as well as the perceived higher quality, health and safety benefits, and low impact on the environment associated with products labelled as "Natural."

28.     Although General Mills represents Nature Valley products as "natural," many of them are not because they contain the highly processed sugar substitutes HFCS, HMCS, and the texturizer Maltodextrin.

29.     Specifically, HFCS, HMCS, and Maltodextrin appear in certain varieties of Nature Valley Chewy Trail Mix Granola Bars, Sweet & Salty Nut Granola Bars, and Granola Thins.

First Amended Class Action Complaint
Case No. C 12-3919 PJH

**Artificial creation of unnatural food ingredients**

30.     HFCS and HMCS are sweeteners created from cornstarch, as opposed to

sugar (sucrose), which is produced from sugar cane or beets.

31.     Maltodextrin is a texturizer used in processed foods and is created from

starch as well.

32.     Because creating each of these three ingredients requires multiple

processing steps in an industrial environment, which transform starches into substances

that are not found in nature, they cannot be described as "Natural."

**HFCS**

33.     In the first step of HFCS production, two different enzymes are applied to

corn starch to create a glucose solution.[12] The industrial enzyme alpha-amylase is added

to corn starch to reduce the size of the starch molecules to produce shorter glucose

oligosaccharides.[13] The enzyme glucoamylase (also called amyloglucosidase) is then

added to break down dextrins and oligosaccharides to the simple sugar glucose.[14] The

solution is then refined by centrifugation, carbon filtration, and ion exchange.[15]

---

[12]     CORN REFINERS ASSOCIATION, NUTRITIVE SWEETENERS FROM CORN 19-20 (2006), *available at* http://www.corn.org/wp-content/uploads/2009/12/NSFC2006.pdf; Kay Parker et al., *High Fructose Corn Syrup: Production, Uses and Public Health Concerns*, 5 BIOTECHNOLOGY & MOLECULAR BIOLOGY REVIEW 71, 72 (Dec. 2010).

[13]     Corn Refiners Association's informational website about HFCS, http://cornnaturally.com/sweeteners-science/science/5/manufacturing/ (last accessed May 22, 2012); Parker, *supra* note 12, at 72.

[14]     Corn Refiners Association's website, *supra* note 13; Parker, *supra* note 12, at 72.

[15]     Corn Refiners Association's website, *supra* note 13.

34.     Next, the solution is treated with a third enzyme, glucose isomerase (also called D-glucose ketoisomerase or D-xylose ketolisomerase), to convert a portion of the glucose to fructose, a process called isomerisation.[16]

35.     Isomerisation continues until the resulting mixture is 42% fructose.[17] The product is refined again and then evaporated to a dry substance.

36.     For higher fructose content levels, the 42% fructose mixture is passed through separation columns that attract and retain the fructose and allow the glucose to pass through thus concentrating the fructose to a higher fructose concentration (80-95%).[18] The lower fructose and higher fructose concentrations are then blended to achieve the desired fructose level, refined, and evaporated.[19]

**HMCS**

37.     To produce HMCS, acids, enzymes, or acids and enzymes[20] are applied in sequence to corn starch to induce partial hydrolysis (saccharification). In other words, the acids or enzymes convert or depolymerize starch to glucose and maltose (a disaccharide consisting of two glucose molecules).[21] Once maltose content is high enough for HMCS,[22]

---

[16]     Corn Refiners Association's website, *supra* note 13; Parker, *supra* note 12, at 72.

[17]     CORN REFINERS ASSOCIATION, NUTRITIVE SWEETENERS FROM CORN 20 (2006), available at http://www.corn.org/wp-content/uploads/2009/12/NSFC2006.pdf (last accessed May 22, 2012).

[18]     *Id.*

[19]     *Id.*

[20]     *Id.* at 17-19.

[21]     21 C.F.R. 184.1865.

[22]     In Maltodextrin, the conversion process is stopped at a relatively early stage to keep the glucose equivalent below 20 resulting in a less-sweet substance. *Id.* at 18.

the acids or enzymes are neutralized, removed, or deactivated, and the resulting product is then refined, purified, and concentrated.[23]

**Maltodextrin**

38.     To produce Maltodextrin, acids, enzymes, or acids and enzymes[24] are applied in sequence to a starch slurry to induce partial hydrolysis (saccharification). In other words, the acids or enzymes convert or depolymerize starch to glucose or maltose molecules.[25] Once maltose content is high enough for Maltodextrin,[26] the acids or enzymes are neutralized, removed or deactivated, and the resulting product is then refined, purified, and concentrated.[27]

**General Mills' deliberate deception by falsely using "Natural"**

39.     Certain varieties of Chewy Trail Mix Granola Bars, Sweet & Salty Nut Granola Bars, and Granola Thins are labeled "Natural" yet contain the non-natural ingredients HFCS, HMCS, and Maltodextrin.

40.     The "Natural" claim appears on the front and back of the boxes of Nature Valley Chewy Trail Mix Granola Bars Fruit & Nut[28] and Dark Chocolate & Nut varieties.

---

[23]     *Id.*

[24]     *Id.* at 17-19.

[25] H. Guzman-Maldonado, *Amylolytic Enzymes and Products Derived from Starch: A Review*, 35(5) CRIT. REV. FOOD SCI. NUTR. 373 (Sept. 1995).

[26]     In Maltodextrin, the conversion process is stopped at a relatively early stage to keep the glucose equivalent below 20 resulting in a less-sweet substance. *Id.* at 18.

[27]     *Id.*

[28]     The back of the Chewy Trail Mix Fruit & Nut Granola Bars is identical to the front.

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19



20      41.     On the front and back of both Chewy Trail Mix Granola Bars' boxes, the

21  phrase "100% Natural" appears immediately beneath the Nature Valley logo. The back of

22  the Chewy Trail Mix Dark Chocolate & Nut Granola Bars' box states: "100% Natural.

23  100% Delicious. Our Chewy Trail Mix bars are made with delicious combinations of

24  100% natural ingredients like whole almonds, cranberries, peanuts and pomegranate."

25
    The side panel of the box describes Nature Valley's sponsorships: "Nature Valley

26
    supports your active lifestyle and is proud to be the official natural granola bar for . . .."

27
    This phrase is followed by logos of PGA Tour and US Ski Team. Finally, the "100%

28

Natural" claim appears beneath the product name on the wrappers of the individual granola bars.



42.     The "100% Natural" claim appears on the front and back of the box of Sweet & Salty Nut Granola Bars Cashew variety.





43.     On the front of the box, the phrase "100% Natural" appears immediately beneath the Nature Valley logo. On the back, "100% Natural" appears again beneath the Nature Valley logo; and also reads "Where do you take your bar? Maybe it's on a late afternoon walk in the park, along for your afternoon gardening break, or on the last ski trip of the season." The back also includes testimonials from Nature Valley consumers purportedly in response to the question "Where do you take your bar?," including "on our vacation out west – Tim – IL," "cross country skiing – Toni – ID," "I make sure my kids have them at summer camp – Rosanne – NM." The top flap has the slogan – "Nature at its most delicious." The side panel of the box describes Nature Valley's sponsorships: "No matter where the path takes you . . . Official natural granola bar of . . .." This phrase is followed by logos for the Nature Valley 100% Natural National Parks Project, PGA Tour, and US Ski Team. Finally, on the wrappers of the individual granola bars, the "100% Natural" claim appears beneath the product name.

44.     On the front of the box and side panel of both the Dark Chocolate and Peanut Butter Granola Thins, and on the front of the wrapper for each individual Granola Thin, the phrase "100% Natural" appears beneath "Nature Valley."



45.     On the back of the package of the Dark Chocolate Granola Thins, "100% Natural" appears again beneath the Nature Valley logo as well as in a phrase stating "100% Natural. 100% Delicious." 100% Natural appears again in the product description. The product description reads, "Indulgence you can feel good about. . . . The uniquely delicate crunch of crispy, toasted granola paired with an irresistible, melt-in-your-mouth taste-all in a 100% natural, 80 calorie square."

46.     On the back of the package of the Peanut Butter Granola Thins, "100% Natural" appears again beneath the Nature Valley logo; and a product description reads, "Crunchy, Thin, Indulgent. And 90 calories . . . Nature Valley Granola Thins bring together the shared goodness of crispy toasted granola, and tempting creamy peanut butter – all in a natural 90-calorie square, so go ahead and enjoy the sweet side of the Valley."



47. Plaintiffs bought certain varieties of Nature Valley Chewy Trail Mix Granola Bars, Sweet & Salty Nut Granola Bars, and Granola Thins relying on the claims that they are "Natural." Plaintiffs were attracted to these products because they prefer to consume all-natural foods for reasons of health, safety, and environmental preservation. Plaintiffs believe that all-natural foods contain only ingredients that occur in nature or are minimally processed, and they would not include HFCS, HMCS, and Maltodextrin among such ingredients. As a result, Nature Valley Chewy Trail Mix Granola Bars, Sweet & Salty Nut Granola Bars, and Granola Thins, with their deceptive "Natural" claims, have no value to the Plaintiffs.

48. Plaintiff Janney has a college-aged daughter who was diagnosed with type 1 diabetes as a newborn. Due to her daughter's condition and need for a healthy diet, Plaintiff Janney seeks out healthier food and food that is all natural.

49. Plaintiff Janney has bought Nature Valley Natural Products for two years or more.

50.     Plaintiff Janney's last purchase of Nature Valley Natural Products was in March 2012.

51.     Plaintiff Janney stopped purchasing these products when she discovered that they were not natural.

52.     Plaintiff McKendrick has a seven-year-old daughter who was diagnosed with ADHD and other behavioral issues at the age of five. After trying medication unsuccessfully, Plaintiff McKendrick started her daughter on the Feingold Diet. The Feingold Diet excludes certain non-natural ingredients. Because Plaintiff McKendrick has observed that an all-natural diet seems to help alleviate her daughter's behavioral issues, Plaintiff McKendrick only purchases all natural products for her daughter. Plaintiff McKendrick specifically purchased Nature Valley Natural Products in order to maintain her daughter's all-natural diet.

53.     Plaintiff McKendrick has bought Nature Valley products for at least 20 years, and has specifically sought out Nature Valley Natural Products with "Natural" on the label in the two years since her daughter's diagnosis.

54.     Plaintiff believes that all-natural products are healthier; prior to her daughter's diagnosis, Plaintiff McKendrick purchased Nature Valley Natural Products because she believed they were all-natural.

55.     Plaintiff McKendrick's last purchase of Nature Valley Natural Products was in February or March 2012.

56.     Plaintiff McKendrick first purchased Granola Thins when they came out in 2010.

57.     Plaintiff McKendrick stopped purchasing Nature Valley Natural Products when she discovered that they contained ingredients that were not natural.

58.     Because of General Mills' deceptive labeling, Plaintiffs and those similarly situated purchased Nature Valley Natural Products, thereby spending money on products they otherwise would not have purchased.

**Communications with General Mills**

59.     On July 23, 2010, Counsel for the Plaintiffs sent a letter to a General Mills Vice President and Deputy General Counsel that described, among other issues, concern with General Mills' usage of "Natural" claims on Nature Valley products that contain HFCS, HMCS, dextrose, and maltodextrin.

60.     On September 9, 2010, General Mills responded regarding HFCS in Nature Valley products with "Natural" claims, but disregarded Counsel's statements regarding HMCS and maltodextrin. General Mills stated that the percentage of products with HFCS in 2010 was 26% and that the amount of products with HFCS in one year would be 0%.

61.     On July 26, 2012, Counsel for Plaintiffs sent a CLRA notice letter to General Mills describing Mills' violation of §1770 of the CLRA by marketing, promoting, labeling, advertising, and selling Nature Valley products in the State of California as being "Natural" or "100% Natural" when said products contain high fructose corn syrup, high maltose corn syrup, and Maltodextrin. By stipulation, General Mills agreed to waive the 30-day notice period set forth in § 1782 (b).

62.     Despite this communication, General Mills has failed to change its practice of including HMCS and Maltodextrin in products with "Natural" claims.

## CLASS ALLEGATIONS

63.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek to represent a class consisting of all persons in California who purchased Nature Valley products that contained HFCS, HMCS, and Maltodextrin and were labeled "Natural" during the period beginning four

years prior to the date this Complaint is filed until the date of class certification ("Class Period").

64.     Specifically excluded from the Class are any entities in which General Mills has a controlling interest, and the officers, directors, employees, affiliates, subsidiaries, legal representatives, heirs, successors, and their assigns of any entity, together with any immediate family member of any officer, director, or employee of said company. Any judge or judicial officer presiding over this action and members of their families within the third degree of relationship are also excluded from the Class.

65.     The proposed Class consists of tens of thousands of members. Thus, the Class is too numerous to make it practicable to join all members as plaintiffs.

66.     For the Class, there are questions of law and fact that predominate over any questions affecting only individual class members.

67.     Plaintiffs' claims are typical of the claims of the class members.

**FIRST CAUSE OF ACTION**

**(Violation of the Consumers Legal Remedies Act, California Civil Code §§ 1750 *et seq.*)**

68.     The Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.*, protects consumers from persons undertaking unfair and deceptive practices in transactions that are intended to result or result in the sale or lease of goods and services to consumers.

69.     General Mills is a "person" as defined by California Civil Code § 1761(c).

70.     Plaintiffs and the putative class members are "consumers" as defined by California Civil Code § 1761(d) because they purchased Nature Valley Natural Products as goods for personal and family purposes.

71.     Nature Valley Natural Products are a "good" under California Civil Code § 1761(a) in that they are tangible chattel purchased for personal and family purposes.

72.     Plaintiffs' purchases of Nature Valley Natural Products are "transactions" as defined by California Civil Code § 1761(e) in that they are agreements between consumers and General Mills entailing the exchange of money for Nature Valley Natural Products.

73.     General Mills' advertising and marketing of Nature Valley Natural Products is prohibited by the CLRA, California Civil Code §§ 1770(a)(5), because it is deceptive to advertise and market Nature Valley Natural Products as "Natural" when they contain the non-natural sugar substitutes HFCS and HMCS, and the texturizer Maltodextrin. By claiming that the products are "Natural" when they are not completely natural, General Mills represents that they have a characteristic or benefit that they do not have.

74.     General Mills' "Natural" claim on products containing HFCS, HMCS, and Maltodextrin is also unfair and deceptive under California Civil Code § 1770(a)(5) because it represents that those products are of a particular standard, quality, or grade when they are of another. That is, the claim conveys that the products are entirely natural when they are not.

75.     Plaintiffs would not have bought Nature Valley Natural Products but for General Mills' deceptive marketing of its product as "Natural."

76.     Plaintiffs provided notice to General Mills of its violations of the CLRA on July 26, 2012. General Mills agreed to waive the 30-day notice period set forth in § 1782 (b).

77.     Pursuant to California Civil Code § 1780(a), Plaintiffs and members of the Class seek compensatory damages, punitive damages, restitution, disgorgement of profits, and an order enjoining General Mills from marketing Nature Valley Natural Products containing HFCS, HMCS, and Maltodextrin as "Natural."

**SECOND CAUSE OF ACTION**

**(Violation of the Unfair Competition Law, California Business and Professions Code
§§ 17200 *et seq.*)**

78.      The Unfair Competition Law ("UCL"), California Business and Professions
Code §§ 17200 *et seq.*, provides for injunctive relief from persons engaging in unfair
competition, which includes "any unlawful, unfair or fraudulent business act or
practice," and "unfair, deceptive, untrue or misleading advertising."

79.      The UCL covers General Mills' business practice of labeling Nature Valley
products as "Natural." General Mills is a "person" subject to the UCL, California
Business and Professions Code § 17201, because it is a corporation.

80.      The "Natural" label on a product containing HFCS, HMCS, and
Maltodextrin violates the UCL.

(a) It is an unlawful business practice under the UCL because it violates California
   Civil Code § 1770(a)(5), which prohibits "[r]epresenting that goods or services
   have . . . characteristics [or] benefits . . . which they do not have," and
   California Civil Code § 1770(a)(7), which prohibits "[r]epresenting that goods
   or services are of a particular standard, quality, or grade . . . if they are of
   another." General Mills represents that Nature Valley granola bars are
   "Natural" when they are not wholly natural.

(b) It is also an unlawful business practice because it violates the False Advertising
   Law. The label "Natural" is untrue and misleading to consumers.

(c) It is an unfair business practice because the injury in fact suffered by Plaintiffs
   and other consumers is substantial, cannot reasonably be avoided, and
   outweighs any benefits to consumers. General Mills' practice of marketing
   products with non-natural ingredients as "Natural" yields no benefits to

consumers but does cause substantial injury in fact in that consumers pay for products that they would not otherwise buy. Consumers cannot reasonably avoid such injury because they have no reasonable way of knowing Nature Valley Natural Products are not "Natural" as promised.

(d)  It violates California's Sherman Law because Nature Valley Natural Products are misbranded in violation of  California's Health and Safety Code, §§ 109875, *et seq.*, which declares that food is misbranded if its labeling is false or misleading in any particular way and further provides that it is unlawful for any person to misbrand any food. Cal. Health & Saf. Code, §§ 110660, 110765.

81.     The label also violates the UCL because it constitutes unfair, deceptive, untrue, and misleading advertising by representing a product as "Natural" when it contain non-natural ingredients HFCS, HMCS, and Maltodextrin.

82.     Pursuant to California Business and Professions Code § 17203, Plaintiffs and members of the Class seek restitution, disgorgement of profits, and an order enjoining General Mills from marketing its Nature Valley Natural Products containing HFCS, HMCS, and Maltodextrin as "Natural."

**THIRD CAUSE OF ACTION**

**(Violation of the False Advertising Law, California Business and Professions Code §§ 17500 *et seq.*)**

83.     The False Advertising Law ("FAL"), California Business and Professions Code §§ 17500 *et seq.*, makes it unlawful for a firm to induce the public to buy its products by disseminating untrue or misleading statements about the products.

84.     The "Natural" claim on the packaging of Nature Valley products violates the FAL because it misleads reasonable consumers into believing the products are

entirely natural, when they contain non-natural ingredients HFCS, HMCS, and Maltodextrin.

85.     Pursuant to California Business and Professions Code § 17535, Plaintiffs and members of the Class seek restitution, disgorgement of profits, and an order enjoining General Mills from marketing its Nature Valley products containing HFCS, HMCS, and Maltodextrin as "Natural."

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

86.     As a result of its deceptive conduct, General Mills was enriched at the expense of Plaintiffs and those similarly situated.

87.     It would be unjust and inequitable for General Mills to retain its profits earned from misrepresenting its products to increase sales.

88.     Therefore, the funds that General Mills has received from consumers should be disgorged as illegally gotten gains.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs pray that the Court:

1. Certify this matter as a class action with the class defined as set forth above, appoint Plaintiffs as representatives of the Class, and appoint their attorneys as class counsel;

2. Declare that HFCS, HMCS, and Maltodextrin do not occur in nature and are not minimally processed;

3. Declare that General Mills' practice of labeling products containing HFCS, HMCS, and Maltodextrin as "Natural" violates California's Consumer Legal Remedies Act, Unfair Competition Law, and False Advertising Law;

4. Enjoin General Mills from marketing, within the state of California, products

containing HFCS, HMCS, and Maltodextrin with claims of "100% Natural," "All Natural," or "Natural;"

5. Award damages to class members;

6. Direct General Mills to disgorge profits from its misleading and deceptive practice and to pay restitution to the classes;

7. Direct General Mills to pay costs and attorney fees associated with this litigation; and

8. Grant any other or further relief that the Court may deem appropriate, just, and proper.

Dated: August 21, 2012

Respectfully submitted,

Baker Law, P.C.

_____
George Richard Baker

     Baker Law, P.C.
     524 Union Street, #213
     San Francisco, CA 94133
     Telephone: (415) 295-4814
     Facsimile: (800) 866-6556

Steven M. Sherman (164620)

     Sherman Business Law
     220 Montgomery Street, 15th Floor
     San Francisco, CA 94104
     Telephone: (415) 403-1660
     Facsimile: (415) 397-1577

- and -

Stephen Gardner
Seema Rattan
Amanda Howell

Center for Science in the Public Interest
5646 Milton Street, Suite 211
Dallas, TX 75206
Telephone: (214) 827-2774
Facsimile: (214) 827-2787

*Lead Counsel for Plaintiffs*

First Amended Class Action Complaint
Case No. C 12-3919 PJH