UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUDITH JANNEY, et al.,

    Plaintiffs,

    v.

GENERAL MILLS,

    Defendant.

_____/

No. C 12-3919 PJH

**ORDER GRANTING MOTION TO DISMISS IN PART AND DENYING IT IN PART**

Defendant's motion to dismiss the first amended complaint came on for hearing before this court on May 1, 2013. Plaintiffs appeared by their counsel Stephen Gardner, and defendant appeared by its counsel Charles C. Sipos and David T. Biderman. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion in part and DENIES it in part.

## BACKGROUND

In this proposed class action, plaintiffs allege that the product packaging and advertising of certain Nature Valley® products manufactured and sold by defendant General Mills is deceptive because the products, which contain the sweeteners high fructose corn syrup ("HFCS"), high maltose corn syrup ("HMCS"), and/or maltodextrin and rice maltodextrin ("Maltodextrin"), are labeled "natural."[1] Plaintiffs claim that these substances are "highly processed" and are therefore not "natural."

In the first amended complaint ("FAC"), plaintiffs assert four causes of action – a claim under the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750(a)(5), (a)(7); a claim of unfair competition under California Business & Professions

---

[1] This includes the use of the phrases "100% Natural," "All Natural," and "Natural" on the product label or in its marketing.

Code § 17200 ("UCL"); a claim of false advertising under California Business & Professions Code § 17500 ("FAL"); and a claim of unjust enrichment.

Plaintiffs allege that the term "natural" applies only to products that contain no artificial or synthetic ingredients and that consist entirely of ingredients that are only minimally processed. Plaintiffs assert, however, that General Mills deceptively uses the term "natural" to describe products "containing ingredients that have been fundamentally altered from their natural state and cannot be considered 'minimally processed,'" and that the use of "natural" to describe such products "creates customer confusion and is deceptive." FAC ¶ 3.

Plaintiffs contend that the term "natural" is "pervasive and prominent on the packaging and advertising" of Nature Valley® products, and that General Mills "reinforces" the image of its products as all-natural on the Nature Valley® website, and through social media accounts on Twitter, Facebook, Flickr, and YouTube. FAC ¶ 4. Indeed, plaintiffs assert, the name Nature Valley® itself "directly conjures up images of naturalness." FAC ¶ 5. For example, they claim that the Nature Valley® website, which "features images of forests, mountains, and seaside landscapes," links Nature Valley® with "the concept of natural." FAC ¶ 23. They contend that by representing that Nature Valley® products are "natural," General Mills "seeks to capitalize on consumers' preference for all-natural foods and the association between such foods and a wholesome way of life." FAC ¶ 27.

Plaintiffs assert that they bought certain varieties of Nature Valley® Chewy Trail Mix Granola Bars, Sweet & Salty Nut Granola Bars, and Granola Thins, relying on the claims that they are "natural." Plaintiffs were "attracted to these products because they prefer to consume all-natural foods for reasons of health, safety, and environmental preservation[,]" and they "believe that all-natural foods contain only ingredients that occur in nature or are minimally processed, and they would not include HFCS, HMCS, and Maltodextrin among such ingredients." As a result, the Nature Valley® Chewy Trail Mix Granola Bars, Sweet & Salty Nut Granola Bars, and Granola Thins, with their "deceptive 'Natural' claims," have no value to them. FAC ¶ 47. They contend that they stopped buying the Nature Valley®

2

products when they discovered they were not "all natural." FAC ¶¶ 51, 57.

General Mills now seeks an order dismissing the FAC pursuant to Federal Rules of Civil Procedure 12(h)(3) and 12(b)(6), arguing that the court lacks subject matter jurisdiction over the case, and that plaintiffs have failed to plead fraud with particularity.

**DISCUSSION**

A.  Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Nevertheless, however, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

In addition, in actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). That is, Rule 9(b) requires that falsity be pled with specificity, including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citations

3

1  omitted); see also Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir.1993).

2        Consequently, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir.1997)). Moreover, the plaintiff must do more than simply allege the neutral facts necessary to identify the transaction; he must also explain why the disputed statement was untrue or misleading at the time it was made. Yourish v. California Amplifier, 191 F.3d 983, 992–93 (9th Cir. 1999).

B.    Defendant's Motion

      General Mills makes two main arguments – that the claims should be dismissed under the "primary jurisdiction doctrine," and that the claims fail to allege fraud with particularity as required by Rule 9(b).

    1.    Dismissal under the primary jurisdiction doctrine

      Under the primary jurisdiction doctrine, courts may determine that the initial decision-making responsibility should be made by the relevant federal agency rather than the courts. Syntek Semiconductor v. Microchip Tech., 307 F.3d 778, 780 (9th Cir. 2002); see also Reiter v. Cooper, 507 U.S. 258, 268 (1993). General Mills contends that the court should dismiss the entire action because any decision regarding the meaning and use of the label "natural" should be made by the United States Food and Drug Administration ("FDA").

      The primary jurisdiction doctrine is a prudential, rather than a jurisdictional, limitation, as the court has discretion to retain jurisdiction (which it would not if the doctrine were jurisdictional). See Reiter, 507 U.S. at 268-69; see also Davel Commc'ns, Inc. v. Qwest Corp., 460 F.3d 1075, 1091 (9th Cir. 2006) (where primary jurisdiction lies with an agency, the court may stay the case pending administrative action or dismiss it without prejudice). Application of the doctrine does not imply that the court lacks subject-matter jurisdiction, but rather that the case "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." Brown v. MCI WorldCom Network Servs., Inc., 277 F.3d 1166, 1172 (9th Cir. 2002); see

also Syntek, 307 F.3d at 780.

In determining whether to invoke the primary jurisdiction doctrine, courts generally consider whether there is (1) a need to resolve an issue (2) that has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.  Clark v. Time Warner Cable, 523 F.3d 1110, 1114-15 (9th Cir. 2008); see also Syntek, 307 F.3d at 781 (relevant factors are whether agency determination lies at the heart of task assigned to agency by Congress; whether agency expertise is required to unravel intricate technical facts; whether the agency determination would materially aid the court).

General Mills argues that the question whether food products are "natural" is best left to the FDA's regulatory authority, and that application of the factors listed above confirms that dismissal on primary jurisdiction grounds is proper here.  General Mills asserts that plaintiffs' claims expressly require the court to decide whether "natural" on food labeling is false or misleading; that food labeling is an issue that Congress has placed within the primary jurisdiction of the FDA; that food labels are indisputably subject to comprehensive regulatory authority by the FDA (and that under that authority, the FDA has adopted a "policy" for the use of "natural," which it enforces through administrative action); and that the FDA's enforcement of its "natural" policy for food labeling is an issue that requires the agency's expertise and uniformity in administration.

"Natural" is not defined in the federal Food, Drug and Cosmetic Act, and, notwithstanding repeated requests, the FDA has expressly declined to define "natural" in any regulation or formal policy statement.  In 1991, the FDA solicited comments on a potential rule adopting a definition for the term "natural," noting that the use of "natural" on food labels "is of considerable interest to consumers and industry."  However, two years later, the FDA concluded that while "the ambiguity surrounding the use of this term . . . could be abated" if the term were adequately defined, the agency would have to carefully consider many facets of the issue if it undertook a rulemaking to define "natural," which it

was unwilling to do because of "resource limitations and other agency priorities." See 58 Fed. Reg. 2302-01 at *2407 (Jan. 6, 1993).

In 2002, the Center for Science in the Public Interest asked the FDA to take action against Ben & Jerry's, an ice cream producer that labeled its products "all natural." The FDA's response was that defining "natural" was "not among the FDA's current enforcement priorities." In 2006, the Sugar Association petitioned the FDA to define "natural," and FDA likewise declined to do so. In 2010, a number of U.S. District Courts issued six-month stays of pending litigation over the use of "natural" in beverages containing high-fructose corn syrup, in the hopes that FDA would formally define "natural." Nevertheless, the FDA declined to do so.

When questions over the use of "natural" arise, the FDA occasionally refers to a statement made in the January 6, 1993, guidance regarding labeling. At that time, the FDA stated that it would "maintain its current policy . . . not to restrict the use of the term 'natural' except for added color, synthetic substances, and flavors[;]" and that it would "maintain its policy regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 Fed. Reg. 2302-01 at *2407.

With only this informal policy statement on which to rely as the definition for "natural," the FDA has taken little action against companies for improperly using the term. The FDA has issued a number of "Warning Letters" to companies who have used the term "natural" in labels for food products that contain various preservatives. General Mills claims that these letters show that the FDA routinely makes considered, expert judgments about what products and food labels warrant administrative action for non-compliance with its informal policy.

For example, in an August 16, 2001 Warning Letter to Oak Tree Farm Dairy, the FDA stated:

> The term "all natural" on the "OAKTREE ALL NATURAL LEMONADE" label is inappropriate because the product contains potassium sorbate. Although FDA has not established a regulatory definition for "natural," we discussed its

6

use in the preamble to the food labeling final regulations (58 Federal Register 2407, January 6, 1993, copy enclosed). FDA's policy regarding the use of "natural," means nothing artificial or synthetic has been included in, or has been added to, a food that would not normally be expected to be in the food. The same comment applies to use of the terms "100 % NATURAL" and "ALL NATURAL" on the "OAKTREE REAL BREWED ICED TEA" label because it contains citric acid.

In an August 29, 2001 Warning Letter to Hirzel Canning Company regarding its canned tomato products, the FDA stated:

[T]he Dei Fratelli® "CHOPPED TOMATOES ONIONS & GARLIC" and "CHOPPED MEXICAN TOMATOES & JALAPENOS" labels bear the term "ALL NATURAL," but according to the ingredient statements, calcium chloride and citric acid are added to the products. We have not established a regulatory definition for the term "natural," however; we discussed its use in the ream le [sic] to the food labeling final regulations (58 Federal Register 2407, January 6, 1993). FDA's policy regarding the use [of] "natural," means that nothing artificial or synthetic as been included in, or as been added to, a food that would not normally be expected to be in the food. Therefore, the addition of calcium chloride and citric acid to these products preclude use of the term "natural" to describe this product.

As yet another example, in a November 16, 2011 Warning Letter to Alexia Foods, the FDA stated:

Your Alexia brand Roasted Red Potatoes & Baby Portabella Mushrooms product is misbranded within the meaning of section 403(a)(1) of the Act [21 U.S.C. 343(a)(1)], which states that a food shall be deemed to be misbranded if its labeling is false or misleading in any particular. The phrase "All Natural" appears at the top of the principal display panel on the label. FDA considers use of the term "natural" on a food label to be truthful and non-misleading when "nothing artificial or synthetic . . . has been included in, or has been added to, a food that would not normally be expected to be in the food." [58 FR 2302, 2407, January 6, 1993].

Your Alexia brand Roasted Red Potatoes & Baby Portabella Mushrooms product contains disodium dihydrogen pyrophosphate, which is a synthetic chemical preservative. Because your products contain this synthetic ingredient, the use of the claim "All Natural" on this product label is false and misleading, and therefore your product is misbranded under section 403(a)(1) of the Act.

We note that your Alexia brand products market a number of food products with the "All Natural" statement on the label. We recommend that you review all of your product labels to be consistent with our policy to avoid additional misbranding of your food products.

In Pom Wonderful LLC v. Coca-Cola Co., 679 F.3d 1170 (9th Cir. 2012), the Ninth Circuit commented (in a somewhat different context), "If the FDA believes that more should be done to prevent deception, or that [a manufacturer's] labels mislead consumers, it can

7

1  act." Id. at 1177.  General Mills contends that the same reasoning is applicable here, and
2  asserts that as the Warning Letters demonstrate, the FDA does act to enforce its "policy."
3  General Mills argues that for the court to usurp the agency's role and decide for itself
4  whether any such action is appropriate "would risk undercutting the FDA's expert
5  judgments and authority."  See id.

6        General Mills acknowledges that some courts have declined to apply the primary
7  jurisdiction doctrine to food labeling claims concerning the use of the term "natural"
8  because the FDA has not elevated its informal "policy" into a formal regulation.  In
9  particular, General Mills cites Lockwood v. Conagra Foods, Inc., 597 F.Supp. 2d 1028,
10 1035 (N.D. Cal. 2009) (declining to apply primary jurisdiction doctrine in false advertising
11 case concerning use of the term "natural" for food label); and Wright v. General Mills, Inc.,
12 2009 WL 3247148 at *4 (S.D. Cal. Sept. 30, 2009) (same).  However, General Mills argues,
13 these decisions predate the Ninth Circuit's decision in Pom Wonderful, which held that
14 deference to the agency is proper even if no formal regulation has been promulgated.  See
15 id., 679 F.3d at 1177).[2]

16       Plaintiffs disagree with General Mills' assertion that the FDA has issued repeat and
17 consistent "guidance" on the subject of what is "natural" in food products, and contend that
18 in fact, the FDA has explicitly and repeatedly refused to define the term "natural," and that
19 current FDA guidance regarding the term is applicable only to added colors and flavors in
20 foods (citing 21 C.F.R. § 101.22 - Food Labeling: Nutrition Content Claims).  They contend
21 that the fact that the FDA has not promulgated a single regulation defining "natural" in the
22 context of food products – notwithstanding significant consumer and industry interest for
23 more than 20 years, as well as a number of specific requests that it do so – means that a
24 dismissal or stay under the primary jurisdiction doctrine would have no effect on the FDA's
25 position.

---

[2] The court notes that not all courts since Pom Wonderful have found that the primary jurisdiction doctrine supports dismissal of "natural" claims.  See, e.g., Brazil v. Dole Food Company, __ F.Supp. 2d __, 2013 WL 1209955 (N.D. Cal. March 25, 2013); Jones v. Con-Agra Foods, Inc., __ F.Supp. 2d __, 2012 WL 6569393 (N.D. Cal. Dec. 17, 2012).

In any event, plaintiffs argue, they are not asking the court to define "natural," but rather to decide a question of state law – whether General Mills' marketing of its Nature Valley® products as "natural" could mislead reasonable consumers. Plaintiffs concede that the FDA has extensively regulated food labeling, but argue that cases involving whether or not food labels are misleading do not necessarily entail technical questions or require agency expertise, and that for that reason the court in this case should not invoke the primary jurisdiction doctrine.

The question is a close one, but on balance the court finds that the motion must be DENIED, at least at this stage of the litigation. In Pom Wonderful, the Ninth Circuit found that when a plaintiff's cause of action requires a court to decide an issue committed to the FDA's expertise, dismissal in deference to that agency is the proper result – even if no formal regulation has been adopted. Id., 679 F.3d at 1177. Thus, in Astiana v. Hain Celestial, __ F.Supp. 2d __, 2012 WL 5873585 (N.D. Cal. Nov. 19, 2012), this court relied on Pom Wonderful to dismiss on primary jurisdiction grounds a complaint that alleged that the use of the word "natural" on cosmetic products was false and misleading. See id., 2012 WL 5873585 at *2.

General Mills argues that these cases demonstrate that dismissal of the FAC on primary jurisdiction grounds is proper under the Syntek factors. The court agrees that the Syntek factors favor the resolution of this issue by the FDA. The question whether specific food ingredients can be included in food products that are labeled "natural" implicates the regulatory authority of the FDA – the agency charged by Congress with regulating food safety and food products labeling, among other things. See 21 U.S.C. § 343 (statute implementing extensive regulatory regime for food labels for purposes of determining whether food is misbranded). Enforcement of a policy regarding the labeling of food products as "natural" requires application of the FDA's expertise and uniformity in administration.

It is true that the issuance of the informal "policy," or its citation by the FDA when it chooses to do so, suggests that the FDA does have a position of sorts – unlike the situation

9

in Astiana, where the FDA had issued no guidance whatsoever, even informal policy statements, regarding the use of the term "natural" on cosmetics packaging. Nevertheless, in repeatedly declining to promulgate regulations governing the use of "natural" as it applies to food products, the FDA has signaled a relative lack of interest in devoting its limited resources to what it evidently considers a minor issue, or in establishing some "uniformity in administration" with regard to the use of "natural" in food labels. Accordingly, any referral to the FDA would likely prove futile. Thus, the court finds little reason to stay or dismiss the case to allow the FDA the opportunity to take action, even if the other factors are present.

2.  Failure to state a claim

General Mills also argues that the FAC should be dismissed for failure to plead fraud with particularity, as required by Rule 9(b). With regard to the five specifically identified products (the "Named Products") – Nature Valley® Chewy Trail Mix Dark Chocolate & Nut Granola Bars; Nature Valley® Chewy Trail Mix Fruit & Nut Granola Bars; Nature Valley® Sweet & Salty Nut Cashew Granola Bars; Nature Valley® Dark Chocolate Granola Thins; and Nature Valley® Peanut Butter Granola Thins – and the allegations that the packaging for these products includes false representations that the products are "100% Natural" and "100% Delicious;" and that the granola bars are the "official granola bar" of the PGA Tour and the U.S. ski team, General Mills argues that the FAC fails to comply with Rule 9(b) because it does not allege which products each plaintiff purchased, or on which of the cited statements each plaintiff relied.

General Mills also contends that the FAC fails to allege particularized facts regarding representations made in four sources of advertising apart from the product packaging – the Nature Valley® website, Flickr photostream, Facebook page, and YouTube channel; and also fails to identify any misrepresentation with respect to products other than the five "Named Products."

General Mills argues that the FAC does not allege facts showing that the four online sources of advertising include any representations that any Nature Valley® products are "natural," or that any plaintiff relied on any representations in those sources. Rather,

1  General Mills contends, the FAC vaguely asserts only that the four sources are "linked with
2  the concept of natural" because they feature, e.g., images of forests, mountains, and
3  seascapes; photographs of people in natural settings such as deserts, forests, lakes,
4  beaches or mountains; photographs of wildlife, plants, lakes, clouds; or videos of mountain
5  bikers riding on forest or desert trails and pausing to admire scenic vistas while snaking on
6  granola bars. See FAC ¶¶ 23-26.

7  General Mills contends that in a deceptive advertising case, Rule 9(b) requires that
8  the plaintiff or plaintiffs identify specific advertisements and promotional materials; allege
9  when the plaintiff or plaintiffs were exposed to the materials; and explain how such
10 materials were false or misleading. General Mills argues that the FAC does not meet this
11 standard with regard to the online advertising, as it does not allege that plaintiffs relied on
12 specific materials (which also means that plaintiffs do not have standing to assert the UCL
13 claims); does not allege when plaintiffs were exposed to the materials, or that they were
14 exposed to them at all; and does not even allege that the four online sources included any
15 representations that Nature Valley® products are "natural" – just that they include images
16 such as "photographs featuring people in natural settings," and "photographs of nature."
17 See, e.g., FAC ¶¶ 24, 25

18 In addition, General Mills asserts, while the FAC describes only the representations
19 regarding these five Named Products, plaintiffs also purport to bring their claims with
20 respect to unidentified Nature Valley® products that are described as "natural" by General
21 Mills and "contain ingredients that have been fundamentally altered from their natural state
22 and cannot be considered minimally processed." FAC ¶ 2 n.3. Yet, General Mills argues,
23 the FAC does not identify any such "other" products or allege that plaintiffs purchased any
24 products other than the Named Products.

25 General Mills argues further that the FAC identifies only three ingredients it claims
26 are not "natural" – HFCS, HMCS, and Maltodextrin – but acknowledges that even under the
27 FAC's definition of "natural," not all Nature Valley® products are deceptively described as
28 "natural." See, e.g., FAC ¶ 10 ("many" Nature Valley® products contain highly processed

ingredients such as HFCS, HMCS, and Maltodextrin); FAC ¶ 29 (HFCS, HMCS, and Maltodextrin appear in "certain varieties of" Nature Valley® granola bars and granola thins); FAC ¶ 28 (General Mills represents Nature Valley® products as "Natural," but "many of them are not"); FAC ¶ 39 ("certain varieties" of granola bars are labeled "Natural" but contain HFCS, HMCS, and Maltodextrin).

In opposition, plaintiffs assert that claims under California's UCL or FAL do not include fraud as an element, and therefore generally do not need to be pled with particularity. Plaintiffs also contend that they are not relying on a unified fraudulent course of conduct, and that for that reason they need only satisfy the notice pleading standards of Rule 8.

Nevertheless, plaintiffs argue, if the court determines that some of the allegations in the FAC are subject to Rule 9(b), those allegations are nonetheless sufficient to give General Mills notice of the particular misconduct that is alleged to constitute the fraud charged so that they can defend against it. Here, plaintiffs assert, they have adequately alleged a fraud claim, by alleging what is false and misleading about General Mills' statements (products are "All Natural"), and why the statements are false (products contain HFCS, HMCS, and Maltodextrin), and that this is enough to satisfy the Rule 9(b) pleading requirements.

As for whether the FAC adequately alleges plaintiffs' reliance on the allegedly deceptive statements, plaintiffs argue that the "plain language" of the FAC and the photographs reproduced in the FAC showing the fronts of the packaging of the Nature Valley® products and the Nature Valley® website "allege the very statements [p]laintiffs saw and relied on prior to purchasing those Products." They assert that the FAC says that "all Products" labeled "100% Natural" that also contain non-natural ingredients are "misleading" to plaintiffs and any other "reasonable consumers," and that this allegation is sufficient to meet both Rule 8 and Rule 9(b).

The court finds that the motion must be GRANTED and DENIED in part. Claims that sound in fraud are subject to Rule 9(b). Kearns v. Ford Motor Co., 567 F.3d 1120, 1125

(9th Cir. 2009). Claims that allege facts that necessarily constitute fraud – a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages – must also satisfy Rule 9(b)'s pleading requirements because they sound in fraud. See Vess, 317 F.3d at 1105. That is, regardless of whether fraud is a necessary element of a claim, where a plaintiff alleges a uniform fraudulent course of conduct, and relies on that course of conduct as the basis for the claims, the complaint must meet the requirements of Rule 9(b). Id. at 1103. In addition, where the claim is that the defendant made false statements for financial gain, the complaint is grounded in fraud. Kearns, 567 F.3d at 1125.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale . . . of goods or services to any consumer." Cal. Civ. Code § 1770. The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. As a result, depending on the facts alleged, the heightened pleading requirements of Rule 9(b) may apply to claims arising under CLRA and UCL. See Kearns, 567 F.3d at 1125.

Here, the FAC alleges that General Mills "deceptively describes certain products as being 'Natural' when, in fact, they are not." FAC ¶ 3. It defines the term "deceptive" as including conduct that is deceptive, unfair, misleading, unlawful, fraudulent, and untrue. FAC ¶ 1 n.1. The allegation that General Mills misrepresents its products as "natural" is central to each of plaintiffs' claims. See, e.g., FAC ¶ 73-75 (CLRA claim), ¶ 80-81 (UCL claim), ¶ 84 (FAL claim), and ¶ 86 (unjust enrichment).

The basis of plaintiffs' claims is that General Mills has falsely represented that its Nature Valley® products are "All Natural" or "100% Natural," despite knowing that they contain processed sweeteners, and that plaintiffs bought the products because they believed they were "natural." Moreover, just as in Kearns, 567 F.3d at 1125, plaintiffs claim that General Mills intentionally misrepresents its products for financial gain. FAC ¶ 9. Plaintiffs also assert that General Mills represents that its products are "natural" with knowledge of falsity and with intent to induce reliance. See FAC ¶¶ 27, 39-58, 59-61.

When claims under the CLRA, UCL, and FAL are based on a manufacturer's alleged misrepresentations about a product's characteristics, those claims sound in fraud and Rule 9(b) applies. Morrison v. TriVita, Inc., 2013 WL 1148070 at *5 (S.D. Cal. March 19, 2013); Pirozzi v. Apple Inc., __ F.Supp. 2d __, 2012 WL 6652453 at *6 (N.D. Cal. Dec. 20, 2012); see also Kearns, 567 F.3d at 1127. Thus, because plaintiffs' claims are "grounded in" fraud, they are subject to the strict pleading requirements of Rule 9(b).

To the extent that the FAC alleges that the use of the terms "Natural" or "100% Natural" on the packaging or advertising for the five Named Products was deceptive because those products contain HFCS, HMCS, and/or Maltodextrin as ingredients, the court finds for purposes of this Rule 12(b)(6) motion that the FAC alleges false representations – one element of a claim of fraud – as required under Rule 9(b).

In addition, the FAC alleges that during the class period, plaintiff Judith Janney purchased Nature Valley® Chewy Trail Mix Dark Chocolate & Nut Granola Bars and Nature Valley® Peanut Butter Granola Thins; and that plaintiff Amy McKendrick purchased Nature Valley® Chewy Trail Mix Fruit & Nut Granola Bars, Nature Valley® Sweet & Salty Nut Cashew Granola Bars, and Nature Valley® Dark Chocolate and Peanut Butter Granola Thins. FAC ¶¶ 16, 17. Both plaintiffs are alleged to have purchased "certain varieties" of Nature Valley® Granola Bars and Granola Thins "relying on the claims that they are "Natural."

Elsewhere in the FAC, plaintiffs allege that General Mills represents that Nature Valley® products are "natural" in order to "capitalize on" – or make money from – customers' preference for "all-natural foods." FAC ¶ 27. Thus, as to this limited portion of the claims – the named plaintiffs' purchasing of the five Named Products – the court finds that the pleading is sufficient to satisfy Rule 9(b), and the motion is DENIED on that basis.

However, the FAC does not plead fraud with particularity with regard to two areas – the online marketing sources (the Nature Valley® website, Facebook, Flickr, YouTube, plus presumably Twitter, which is pled in the FAC but which General Mills does not mention); and the "unidentified products."

In a deceptive advertising case, Rule 9(b) requires that the plaintiff(s) identify specific advertisements and promotional materials; allege when the plaintiff(s) were exposed to the materials; and explain how such materials were false or misleading. See Von Koenig v. Snapple Beverage Corp., 2011 WL 43577 at *3 (E.D. Cal. Jan. 6, 2011); see also Kearns, 567 F.3d at 1126 (claims dismissed where plaintiff failed to specify which advertisements or sales materials he saw or when he was exposed to them).

Plaintiffs' position appears to be that the presence of the term "100% Natural" on the physical product labels is sufficient to support all of their claims, no matter how vaguely articulated. However, they have not addressed the fact that the FAC fails to identify with particularity (or at all) any misrepresentations made in the online sources. The FAC does not specify what the exact false or misleading statements are, why the statements are false or misleading, where exactly the statements are located, or which statements plaintiffs relied on. Thus, to the extent that plaintiffs' claims rely on alleged representations made on the Nature Valley® website, Flickr photostream, Facebook page, and YouTube channel, they must be dismissed for failure to allege fraud with particularity.[3]

As for the assertions regarding the "unidentified products" – the products other than the Named Products specifically identified in the FAC – plaintiffs claim that whether they purchased other types of products is immaterial to the allegations at issue or the court's inquiry. The court disagrees. A plaintiff alleging that product labels or packaging contain misrepresentations must make specific allegations regarding each product, and attaching only a selection of labels will not suffice under Rule 9(b). See Ries v. Hornell Brewing Co., 2011 WL 1299286 at *4 (N.D. Cal. Apr. 4, 2011); Von Koenig, 713 F. Supp. 2d at 1078.

In order to plead fraud with particularity, plaintiffs must specify the exact misleading statements, and to the extent that they are claiming that products they have not identified were falsely designated or advertised, those claims are not plausible. Plaintiffs' vague

---

[3] Moreover, the allegation that an "image of nature" can be viewed as deceptively describing the ingredients in granola bars is entirely implausible, and therefore inadequate to state a claim under any of the causes of action pled in the FAC – much less, to state a claim for fraud.

description of the products they contend are at issue (apart from the Named Products) leaves General Mills (and the court) to guess which of its products (and which statements about those products) General Mills will be required to defend in this case.

## CONCLUSION

In accordance with the foregoing, the motion to dismiss or stay the action based on the primary jurisdiction doctrine is DENIED.  The motion to dismiss the FAC for failure to allege fraud with particularity is GRANTED in part and DENIED in part.  The dismissal is with leave to amend.  Any amended complaint must be filed no later than June 7, 2013.  Defendant's response to the third amended complaint shall be filed no later than 21 days thereafter.

**IT IS SO ORDERED.**

Dated:  May 10, 2013

PHYLLIS J. HAMILTON
United States District Judge