**SHERMAN BUSINESS LAW**
Steven M. Sherman (164620)
steven@shermanbusinesslaw.com
220 Montgomery Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 403-1660
Facsimile: (415) 397-1577

**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
Stephen Gardner (pro hac vice)
sgardner@cspinet.org
5646 Milton Street, Suite 714
Dallas, Texas 75206
Telephone: (202) 777-8381
Facsimile: (214) 827-2787
Lead counsel for Plaintiffs

*Attorneys for Plaintiffs and the Proposed Class*
(additional counsel listed on signature page)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDITH JANNEY and AMY MCKENDRICK, on behalf of themselves and those similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>GENERAL MILLS and DOES 1-20,<br><br>      Defendants. | Case No. C 12-3919 PJH<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>1.  **CONSUMERS LEGAL REMEDIES ACT (CAL. CIVIL CODE §§ 1750 *ET SEQ.*);**<br><br>2.  **UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*);**<br><br>3.  **FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.*);**<br><br>4.  **UNJUST ENRICHMENT** |

## INTRODUCTORY STATEMENT

1.      Plaintiffs Judith Janney and Amy McKendrick ("Plaintiffs"), individually and on behalf of those similarly situated, bring this class action against Defendant

General Mills for the deceptive[1] practice of marketing its Nature Valley products as "Natural"[2] when they contain non-natural, highly processed ingredients such as high fructose corn syrup (HFCS), high maltose corn syrup (HMCS), and maltodextrin and rice maltodextrin (together, Maltodextrin).

2.    This case is about the deceptive manner in which General Mills markets its products to Plaintiffs and to the general public.

3.    The term "Natural" only applies to those products that contain no artificial or synthetic ingredients and consist entirely of ingredients that are only minimally processed. However, General Mills deceptively uses the term "Natural" to describe products containing ingredients that have been fundamentally altered from their natural state and cannot be considered "minimally processed." The use of the term "Natural" to describe such products creates consumer confusion and is deceptive. Plaintiffs allege that General Mills deceptively describes the Nature Valley Natural Products purchased by Plaintiffs ("Purchased Products")[3] as being "Natural" when, in fact, they are not.

4.    The term "Natural" is pervasive and prominent on the packaging and advertising of the Purchased Products.

---

[1] "Deceptive" includes the following terms from the Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.*, the Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 *et seq.*, and the False Advertising Law ("FAL"), California Business and Professions Code §§ 17500 *et seq.*: deceptive, unfair, misleading, unlawful, fraudulent, and untrue.

[2] In this complaint, "Natural" includes any claims of "100% Natural," "All Natural," or "Natural" on a product's label or in its marketing.

[3] In this complaint, "Nature Valley Natural Products" refers to all Nature Valley products that are described as "Natural" by General Mills and contain ingredients that have been fundamentally altered from their natural state and cannot be considered to be miminally processed. "Purchased Products" refers only to those products purchased by one of the Plaintiffs (Nature Valley Chewy Trail Mix Dark Chocolate & Nut Granola Bars, Nature Valley Peanut Butter Granola Thins, Nature Valley Chewy Trail Mix Fruit & Nut Granola Bars, Nature Valley Sweet & Salty Nut Cashew Granola Bars, and Nature Valley Dark Chocolate and Peanut Butter Granola Thins). Plaintiffs make no claim for individual relief of any kind with respect to any product other than the Purchased Products.

5.      The name "Nature Valley" itself directly conjures up images of naturalness.

6.      By marketing the Purchased Products as "Natural," General Mills takes wrongful advantage of consumers' strong preference for foods made entirely of natural ingredients. In a survey, the most popular food label among consumers was "100% natural." "All natural ingredients" was the second most popular food label among consumers, and consumers preferred both labels to those reading "100% organic," "Certified organic ingredients," "Bio-based ingredients," and "Contains natural ingredients."[4]

7.      Consumers attribute a wide range of benefits to foods made entirely of natural ingredients. Consumers perceive all-natural foods to be higher quality, healthier, safer to eat, and less damaging to the environment.

8.      Catering to the consumer's taste for natural foods is tremendously advantageous for businesses. In 2008, foods labeled with the word "natural" produced $22.3 billion in sales, a 10% increase from 2007, and a 37% increase from 2004.[5] In 2009, sales jumped again by 4%.[6]

9.      General Mills profits in this lucrative market for natural foods by dressing up its Nature Valley Natural Products, including the Purchased Products, as "Natural"

---

[4]      *See, e.g., Consumers Prefer '100% Natural' Label Over 'Organic'*, ENVIRONMENTAL LEADER (Jul. 3, 2009), http://www.environmentalleader.com/2009/07/03/consumers-prefer-100-natural-label-over-organic (describing EcoPulse market report by Shelton Group) (last visited May 22, 2012).

[5]      *"Natural" Beats "Organic" in Food Sales According to Nielsen's Healthy Eating Report*, NIELSEN WIRE (Jan. 21, 2009), http://blog.nielsen.com/nielsenwire/consumer/"natural"-beats-"organic"-in-food-sales-according-to-nielsen's-healthy-eating-report (last visited May 22, 2012).

[6]      *U.S. Healthy Eating Trends Part 1: Commitment Trumps the Economic Pinch*, NIELSEN WIRE (Jan. 26, 2010), http://blog.nielsen.com/nielsenwire/consumer/healthy-eating-trends-pt-1-commitment-trumps-the-economic-pinch (last visited May 22, 2012).

and selling them to consumers who seek to purchase products made from ingredients that are found in nature and who are willing to pay more for such foods.

10.     However, these Purchased Products contain, or contained at the time Plaintiffs purchased them, substantial quantities of non-natural, highly processed ingredients such as HFCS, HMCS, and Maltodextrin.

11.     Some of the Purchased Products contained HFCS until it was removed in the last few years.

12.     HFCS and HMCS are factory-produced sweeteners that are created by complex processing, and do not occur in nature.

13.     Maltodextrin is a factory-produced texturizer that is created by complex processing and does not occur in nature. It is used in processed foods as a filler and to enhance texture and flavor.

14.     Nature Valley products containing HFCS, HMCS, and Maltodextrin are not "Natural," despite the language claiming otherwise that emblazons the products' packaging. Therefore, a consumer who buys Nature Valley Natural Products expecting to receive all-natural snacks is deceived, and deprived of the benefit of his bargain. In their purchases of the Purchased Products, Plaintiffs were deceived and deprived of the benefit of the bargain in this manner.

15.     In sum, General Mills markets its Nature Valley Natural Products, including the Purchased Products, in a way that is deceptive to Plaintiffs and other California consumers, and in violation of California law. For these reasons, Plaintiffs seek the relief set forth herein.

**THE PARTIES**

16.     Plaintiff Judith Janney is a resident of Walnut Creek, California. During the Class Period, Plaintiff Janney purchased Nature Valley Chewy Trail Mix Dark Chocolate & Nut Granola Bars and Nature Valley Peanut Butter Granola Thins.

17.     Plaintiff Amy McKendrick is a resident of Kern County, California. During the Class Period, Plaintiff McKendrick purchased Nature Valley Chewy Trail Mix Fruit & Nut Granola Bars, Nature Valley Sweet & Salty Nut Cashew Granola Bars, and Nature Valley Dark Chocolate and Peanut Butter Granola Thins.

18.     Defendant General Mills, Inc. is incorporated in Delaware, and its principal place of business is located in Minneapolis, Minnesota. General Mills develops, markets, and sells food products throughout the world under various brand names. General Mills sells food products under the "Nature Valley" brand name throughout California as well as the rest of the United States.

**JURISDICTION AND VENUE**

19.     Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1332(d) because the aggregate claims of the Class exceed the sum or value of $5,000,000 and there is diversity of citizenship between proposed class members and Defendant.

20.     Venue is appropriate in the Northern District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of sales and purchases and the conduct complained of took place in this district.

**FACTUAL ALLEGATIONS**

21.     General Mills is one of the world's largest food companies,[7] producing and marketing food products in the United States and throughout the rest of the world.

---

[7]     In Fiscal Year 2011, General Mills had global net sales of $14.9 billion. GENERAL MILLS ANNUAL REPORT 2011: A PORTFOLIO FOR QUALITY GROWTH, http://phx.corporate-ir.net/External.File?item=UGFyZW50SUQ9MTAzNDQ1fENoaWxkSUQ9LTF8VHlwZT0z&t=1 (last visited June 6, 2012). . General Mills is ranked number 397 on the 2012 Forbes

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22.     General Mills markets several products under its prominent Nature Valley brand as "Natural," such as this Purchased Product:



23.     By representing that the Purchased Products are "Natural," General Mills sought to capitalize on Plaintiffs' preference for all-natural foods and the association between such foods and a wholesome way of life. Plaintiffs and other consumers are willing to pay more for natural foods because of this association, as well as the perceived higher quality, health and safety benefits, and low impact on the environment associated with products labelled as "Natural." Plaintiffs would not have bought the Purchased Products if they had known that they were not in fact natural products.

**Artificial creation of unnatural food ingredients**

24.     Although General Mills represents Nature Valley products as "Natural," many of them are not because they contain the highly processed sugar substitutes HFCS, HMCS, and the texturizer Maltodextrin.

Magazine annual list of the world's 2000 largest companies, and number 7 on that list within the "food processing" industry. *The World's Largest Public Companies*, FORBES.COM (Apr. 18, 2012), http://www.forbes.com/global2000 (last visited May 22, 2012).

25.    HFCS and HMCS are sweeteners created from cornstarch, as opposed to sugar (sucrose), which is produced from sugar cane or beets.

26.    Maltodextrin is a texturizer used in processed foods and is created from starch as well.

27.    Because creating each of these three ingredients requires multiple processing steps in an industrial environment, which transform starches into substances that are not found in nature, they cannot be described as "Natural."

**HFCS**

28.    In the first step of HFCS production, two different enzymes are applied to corn starch to create a glucose solution.[8] The industrial enzyme alpha-amylase is added to corn starch to reduce the size of the starch molecules to produce shorter glucose oligosaccharides.[9] The enzyme glucoamylase (also called amyloglucosidase) is then added to break down dextrins and oligosaccharides to the simple sugar glucose.[10] The solution is then refined by centrifugation, carbon filtration, and ion exchange.[11]

29.    Next, the solution is treated with a third enzyme, glucose isomerase (also called D-glucose ketoisomerase or D-xylose ketolisomerase), to convert a portion of the glucose to fructose, a process called isomerisation.[12]

30.    Isomerisation continues until the resulting mixture is 42% fructose.[13] The product is refined again and then evaporated to a dry substance.

---

[8]    CORN REFINERS ASSOCIATION, NUTRITIVE SWEETENERS FROM CORN 19-20 (2006), *available at* http://www.corn.org/wp-content/uploads/2009/12/NSFC2006.pdf; Kay Parker et al., *High Fructose Corn Syrup: Production, Uses and Public Health Concerns*, 5 BIOTECHNOLOGY & MOLECULAR BIOLOGY REVIEW 71, 72 (Dec. 2010).

[9]    Corn Refiners Association's informational website about HFCS, http://cornnaturally.com/sweeteners-science/science/5/manufacturing/ (last accessed May 22, 2012); Parker, *supra* note 12, at 72.

[10]    Corn Refiners Association's website, *supra* note 13; Parker, *supra* note 12, at 72.

[11]    Corn Refiners Association's website, *supra* note 13.

[12]    Corn Refiners Association's website, *supra* note 13; Parker, *supra* note 12, at 72.

31.     For higher fructose content levels, the 42% fructose mixture is passed through separation columns that attract and retain the fructose and allow the glucose to pass through thus concentrating the fructose to a higher fructose concentration (80-95%).[14] The lower fructose and higher fructose concentrations are then blended to achieve the desired fructose level, refined, and evaporated.[15]

**HMCS**

32.     To produce HMCS, acids, enzymes, or acids and enzymes[16] are applied in sequence to corn starch to induce partial hydrolysis (saccharification). In other words, the acids or enzymes convert or depolymerize starch to glucose and maltose (a disaccharide consisting of two glucose molecules).[17] Once maltose content is high enough for HMCS,[18] the acids or enzymes are neutralized, removed, or deactivated, and the resulting product is then refined, purified, and concentrated.[19]

**Maltodextrin**

33.     To produce Maltodextrin, acids, enzymes, or acids and enzymes[20] are applied in sequence to a starch slurry to induce partial hydrolysis (saccharification). In other words, the acids or enzymes convert or depolymerize starch to glucose or maltose

---

[13]     CORN REFINERS ASSOCIATION, NUTRITIVE SWEETENERS FROM CORN 20 (2006), available at http://www.corn.org/wp-content/uploads/2009/12/NSFC2006.pdf (last accessed May 22, 2012).

[14]     *Id.*

[15]     *Id.*

[16]     *Id.* at 17-19.

[17]     21 C.F.R. 184.1865.

[18]     In Maltodextrin, the conversion process is stopped at a relatively early stage to keep the glucose equivalent below 20 resulting in a less-sweet substance. *Id.* at 18.

[19]     *Id.*

[20]     *Id.* at 17-19.

molecules.[21] Once maltose content is high enough for Maltodextrin,[22] the acids or enzymes are neutralized, removed or deactivated, and the resulting product is then refined, purified, and concentrated.[23]

**General Mills' deliberate deception by falsely using "Natural"**

34.    Some Purchased Products (Chewy Trail Mix Granola Bars, Sweet & Salty Nut Granola Bars, and Granola Thins) are labeled "Natural" yet contain the non-natural ingredients HFCS, HMCS, and Maltodextrin.

35.    The "Natural" claim appears on the front and back of the boxes of other Purchased Products (Nature Valley Chewy Trail Mix Granola Bars Fruit & Nut[24] and Dark Chocolate & Nut).



---

[21] H. Guzman-Maldonado, *Amylolytic Enzymes and Products Derived from Starch: A Review*, 35(5) Crit. Rev. Food Sci. Nutr. 373 (Sept. 1995).

[22]    In Maltodextrin, the conversion process is stopped at a relatively early stage to keep the glucose equivalent below 20 resulting in a less-sweet substance. *Id.* at 18.

[23]    *Id.*

[24]    The back of the Chewy Trail Mix Fruit & Nut Granola Bars is identical to the front.

9



36.    On the front and back of these two Purchased Products, the phrase "100%

Natural" appears immediately beneath the Nature Valley logo. The back of the Chewy

Trail Mix Dark Chocolate & Nut Granola Bars box states: "100% Natural. 100% Delicious.

Our Chewy Trail Mix bars are made with delicious combinations of 100% natural

ingredients like whole almonds, cranberries, peanuts and pomegranate." The side panel

of the box describes Nature Valley's sponsorships: "Nature Valley supports your active

lifestyle and is proud to be the official natural granola bar for . . .." This phrase is

followed by logos of PGA Tour and US Ski Team. Finally, the "100% Natural" claim

appears beneath the product name on the wrappers of the individual granola bars.



37.     The "100% Natural" claim appears on the front and back of the box of the Purchased Product Sweet & Salty Nut Granola Cashew Bars.



38.     On the front of the box of this Purchased Product, the phrase "100% Natural" appears immediately beneath the Nature Valley logo. On the back, "100% Natural" appears again beneath the Nature Valley logo; and also reads "Where do you take your bar? Maybe it's on a late afternoon walk in the park, along for your afternoon gardening break, or on the last ski trip of the season." The back also includes testimonials from Nature Valley consumers purportedly in response to the question "Where do you take your bar?," including "on our vacation out west – Tim – IL," "cross country skiing – Toni – ID," "I make sure my kids have them at summer camp – Rosanne – NM." The top flap has the slogan – "Nature at its most delicious." The side panel of the box describes Nature Valley's sponsorships: "No matter where the path takes you . . . Official natural granola bar of . . .." This phrase is followed by logos for the Nature Valley 100% Natural National Parks Project, PGA Tour, and US Ski Team. Finally, on the wrappers of the individual granola bars, the "100% Natural" claim appears beneath the product name.

39.     On the front of the box and side panel of the Purchased Products Dark Chocolate Granola Thins and Peanut Butter Granola Thins, and on the front of the

11

wrapper for each individual Granola Thin (contained inside the box), the phrase "100% Natural" appears beneath "Nature Valley."



40.     On the back of the package of the Dark Chocolate Granola Thins, "100% Natural" appears again beneath the Nature Valley logo as well as in a phrase stating "100% Natural. 100% Delicious." 100% Natural appears again in the product description. The product description reads, "Indulgence you can feel good about. . . . The uniquely delicate crunch of crispy, toasted granola paired with an irresistible, melt-in-your-mouth taste-all in a 100% natural, 80 calorie square."

41.     On the back of the package of the Peanut Butter Granola Thins, "100% Natural" appears again beneath the Nature Valley logo; and a product description reads, "Crunchy, Thin, Indulgent. And 90 calories . . . Nature Valley Granola Thins bring together the shared goodness of crispy toasted granola, and tempting creamy peanut butter – all in a natural 90-calorie square, so go ahead and enjoy the sweet side of the Valley."

/

/

/



42.     Plaintiffs bought all Purchased Products relying on the claims that they are "Natural." Plaintiffs were attracted to the Purchased Products because they prefer to consume all-natural foods for reasons of health, safety, and environmental preservation. Plaintiffs believe that all-natural foods contain only ingredients that occur in nature or are minimally processed, and they would not include HFCS, HMCS, and Maltodextrin among such ingredients. As a result, the Purchased Products, with their deceptive "Natural" claims, have no value to the Plaintiffs.

43.     Plaintiff Janney has a college-aged daughter who was diagnosed with type 1 diabetes as a newborn. Due to her daughter's condition and need for a healthy diet, Plaintiff Janney seeks out healthier food and food that is all natural.

44.     Plaintiff Janney has bought Purchased Products for two years or more.

45.     Plaintiff Janney's last purchase of Purchased Products was in March 2012.

46.     Plaintiff Janney stopped purchasing these products when she discovered that they were not natural.

47.     Plaintiff McKendrick has a seven-year-old daughter who was diagnosed with ADHD and other behavioral issues at the age of five. After trying medication unsuccessfully, Plaintiff McKendrick started her daughter on the Feingold Diet. The Feingold Diet excludes certain non-natural ingredients. Because Plaintiff McKendrick has observed that an all-natural diet seems to help alleviate her daughter's behavioral issues, Plaintiff McKendrick only purchases all natural products for her daughter. Plaintiff McKendrick specifically purchased Purchased Products in order to maintain her daughter's all-natural diet.

48.     Plaintiff McKendrick has bought Nature Valley products for at least 20 years, and has specifically sought out Purchased Products with "Natural" on the label in the two years since her daughter's diagnosis.

49.     Plaintiff believes that all-natural products are healthier; prior to her daughter's diagnosis, Plaintiff McKendrick purchased Purchased Products because she believed they were all-natural.

50.     Plaintiff McKendrick's last purchase of Purchased Products was in February or March 2012.

51.     Plaintiff McKendrick first purchased Granola Thins when they came out in 2010.

52.     Plaintiff McKendrick stopped purchasing Purchased Products when she discovered that they contained ingredients that were not natural.

**53.**     Because of General Mills' deceptive labeling, Plaintiffs and those similarly situated bought the Purchased Products, thereby spending money on products they otherwise would not have purchased.

54.     **Communications with General Mills**

55.     On July 23, 2010, Counsel for the Plaintiffs sent a letter to a General Mills Vice President and Deputy General Counsel that described, among other issues, concern with General Mills' usage of "Natural" claims on Nature Valley products that contain HFCS, HMCS, dextrose, and maltodextrin.

56.     On September 9, 2010, General Mills responded regarding HFCS in Nature Valley products with "Natural" claims, but disregarded Counsel's statements regarding HMCS and maltodextrin. General Mills stated that the percentage of products with HFCS in 2010 was 26% and that the amount of products with HFCS in one year would be 0%.

57.     On July 26, 2012, Counsel for Plaintiffs sent a CLRA notice letter to General Mills describing Mills' violation of §1770 of the CLRA by marketing, promoting, labeling, advertising, and selling Nature Valley products in the State of California as being "Natural" or "100% Natural" when said products contain high fructose corn syrup, high maltose corn syrup, and Maltodextrin. By stipulation, General Mills agreed to waive the 30-day notice period set forth in § 1782 (b).

58.     Despite this communication, General Mills has failed to change its practice of including HMCS and Maltodextrin in products with "Natural" claims.

## CLASS ALLEGATIONS

59.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek to represent a class consisting of all persons in California who bought the Purchased Products that contained HFCS, HMCS, and Maltodextrin and were labeled "Natural" during the period beginning four years prior to the date the original complaint was filed until the date of class certification ("Class Period").

60.     Specifically excluded from the Class are any entities in which General Mills has a controlling interest, and the officers, directors, employees, affiliates, subsidiaries, legal representatives, heirs, successors, and their assigns of any entity, together with any immediate family member of any officer, director, or employee of said company. Any judge or judicial officer presiding over this action and members of their families within the third degree of relationship are also excluded from the Class.

61.     The proposed Class consists of tens of thousands of members. Thus, the Class is too numerous to make it practicable to join all members as plaintiffs.

62.     For the Class, there are questions of law and fact that predominate over any questions affecting only individual class members.

63.     Plaintiffs' claims are typical of the claims of the class members.

### FIRST CAUSE OF ACTION

**(Violation of the Consumers Legal Remedies Act, California Civil Code §§ 1750 *et seq.*)**

64.     The Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.*, protects consumers from persons undertaking unfair and deceptive practices in transactions that are intended to result or result in the sale or lease of goods and services to consumers.

65.     General Mills is a "person" as defined by California Civil Code § 1761(c).

66.     Plaintiffs and the putative class members are "consumers" as defined by California Civil Code § 1761(d) because they bought Purchased Products as goods for personal and family purposes.

67.     Each Purchased Product is a "good" under California Civil Code § 1761(a) in that they are tangible chattel purchased for personal and family purposes.

68.    Plaintiffs' purchases of the Purchased Products are "transactions" as defined by California Civil Code § 1761(e) in that they are agreements between consumers and General Mills entailing the exchange of money for Purchased Products.

69.    General Mills' advertising and marketing of Purchased Products is prohibited by the CLRA, California Civil Code §§ 1770(a)(5), because it is deceptive to advertise and market Purchased Products as "Natural" when they contain the non-natural sugar substitutes HFCS and HMCS, and the texturizer Maltodextrin. By claiming that the Purchased Products are "Natural" when they are not completely natural, General Mills represents that they have a characteristic or benefit that they do not have.

70.    General Mills' "Natural" claim on the Purchased Products containing HFCS, HMCS, and Maltodextrin is also unfair and deceptive under California Civil Code § 1770(a)(5) because it represents that the Purchased Products are of a particular standard, quality, or grade when they are of another. That is, the claim conveys that the products are entirely natural when they are not.

71.    Plaintiffs would not have bought Purchased Products but for General Mills' deceptive marketing of its product as "Natural."

72.    Plaintiffs provided notice to General Mills of its violations of the CLRA on July 26, 2012. General Mills agreed to waive the 30-day notice period set forth in § 1782 (b).

73.    Pursuant to California Civil Code § 1780(a), Plaintiffs and members of the Class seek compensatory damages, punitive damages, restitution, disgorgement of profits, and an order enjoining General Mills from marketing any Purchased Products containing HFCS, HMCS, and Maltodextrin as "Natural."

## SECOND CAUSE OF ACTION

**(Violation of the Unfair Competition Law, California Business and Professions Code §§ 17200 *et seq.*)**

74.     The Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 *et seq.*, provides for injunctive relief from persons engaging in unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice," and "unfair, deceptive, untrue or misleading advertising."

75.     The UCL covers General Mills' business practice of labeling Nature Valley products, including the Purchased Products, as "Natural." General Mills is a "person" subject to the UCL, California Business and Professions Code § 17201, because it is a corporation.

76.     The "Natural" label on a Nature Valley product, including the Purchased Products, that HFCS, HMCS, and Maltodextrin violates the UCL.

(a)     It is an unlawful business practice under the UCL because it violates California Civil Code § 1770(a)(5), which prohibits "[r]epresenting that goods or services have . . . characteristics [or] benefits . . . which they do not have," and California Civil Code § 1770(a)(7), which prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another." General Mills represents that Nature Valley products, including the Purchased Products, are "Natural" when they are not wholly natural.

(b)     It is also an unlawful business practice because it violates the False Advertising Law. The label "Natural" is untrue and misleading to consumers.

(c)     It is an unfair business practice because the injury in fact suffered by Plaintiffs and other consumers is substantial, cannot reasonably be avoided, and outweighs any benefits to consumers. General Mills' practice of marketing Nature

Valley products, including the Purchased Products, with non-natural ingredients as "Natural" yields no benefits to consumers but does cause substantial injury in fact in that consumers pay for products that they would not otherwise buy. Consumers cannot reasonably avoid such injury because they have no reasonable way of knowing Nature Valley products, including the Purchased Products, are not "Natural" as promised.

(d)      It violates California's Sherman Law because Nature Valley Natural Products are misbranded in violation of  California's Health and Safety Code, §§ 109875, *et seq.*, which declares that food is misbranded if its labeling is false or misleading in any particular way and further provides that it is unlawful for any person to misbrand any food. Cal. Health & Saf. Code, §§ 110660, 110765.

77.      The label also violates the UCL because it constitutes unfair, deceptive, untrue, and misleading advertising by representing Nature Valley products, including the Purchased Products, as "Natural" when they contain non-natural ingredients HFCS, HMCS, and Maltodextrin.

78.      Pursuant to California Business and Professions Code § 17203, Plaintiffs, acting as representative plaintiffs, seek restitution, disgorgement of profits, and an order enjoining General Mills from marketing any Nature Valley products, including the Purchased Products, containing HFCS, HMCS, and Maltodextrin as "Natural."

### THIRD CAUSE OF ACTION

**(Violation of the False Advertising Law, California Business and Professions Code §§ 17500 *et seq.*)**

79.      The False Advertising Law ("FAL"), California Business and Professions Code §§ 17500 *et seq.*, makes it unlawful for a firm to induce the public to buy Nature

Valley products, including the Purchased Products, by disseminating untrue or misleading statements about the products.

80.     The "Natural" claim on the packaging of Nature Valley products, including the Purchased Products, violates the FAL because it misleads reasonable consumers into believing the products are entirely natural, when they contain non-natural ingredients HFCS, HMCS, and Maltodextrin.

81.     Pursuant to California Business and Professions Code § 17535, Plaintiffs, acting as representative plaintiffs, seek restitution, disgorgement of profits, and an order enjoining General Mills from marketing Nature Valley products, including the Purchased Products, containing HFCS, HMCS, and Maltodextrin as "Natural."

**FOURTH CAUSE OF ACTION**
**(Unjust Enrichment)**

82.     As a result of its deceptive conduct, General Mills was enriched at the expense of Plaintiffs and those similarly situated.

83.     It would be unjust and inequitable for General Mills to retain its profits earned from misrepresenting its products to increase sales.

84.     Therefore, the funds that General Mills has received from consumers should be disgorged as illegally gotten gains.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiffs pray that the Court:

1.     Certify this matter as a class action with the class defined as set forth above, appoint Plaintiffs as representatives of the Class, and appoint their attorneys as class counsel;

2.     Declare that HFCS, HMCS, and Maltodextrin do not occur in nature and are not minimally processed;

1    3.    Declare that General Mills' practice of labeling products containing HFCS,

2  HMCS, and Maltodextrin as "Natural" violates California's Consumer Legal Remedies

3  Act, Unfair Competition Law, and False Advertising Law;

4    4.    Enjoin General Mills from marketing, within the state of California,

5  products containing HFCS, HMCS, and Maltodextrin with claims of "100% Natural,"

6

7  "All Natural," or "Natural;"

8    5.    Award damages to class members;

9    6.    Direct General Mills to disgorge profits from its misleading and deceptive

10  practice and to pay restitution to the classes;

11    7.    Direct General Mills to pay costs and attorney fees associated with this

12  litigation; and

13    8.    Grant any other or further relief that the Court may deem appropriate, just,

14  and proper.

15

16  Dated: June 27, 2013

17
                                    Respectfully submitted,
18

19                                  **CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
                                    Stephen Gardner (pro hac vice)
20                                  sgardner@cspinet.org
                                    5646 Milton Street, Suite 714
21                                  Dallas, Texas 75206
                                    Telephone: (202) 777-8381
22                                  Facsimile: (214) 827-2787
                                    Lead counsel for Plaintiffs
23
                                    **SHERMAN BUSINESS LAW**
24                                  Steven M. Sherman (164620)
                                    steven@shermanbusinesslaw.com
25                                  220 Montgomery Street, 15th Floor
                                    San Francisco, CA 94104
26                                  Telephone: (415) 403-1660
                                    Facsimile: (415) 397-1577
27

28

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. C 12-3919 PJH

**BAKER LAW, P.C.**
George Richard Baker (224003)
richard@bakerlawpc.com
524 Union Street, #213
San Francisco, CA 94133
Telephone: (415) 295-4814
Facsimile: (800) 866-6556

**REESE RICHMAN LLP**
Michael R. Reese (206773)
mreese@reeserichman.com
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:      (212) 643-0500
Facsimile:      (212) 253-4272

By

/s/ Stephen Gardner
Stephen Gardner

*Attorney for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2013, I served the foregoing Statement upon all parties in this matter via electronically filing the documents with the Clerk of the Court using the CM/ECF system.

Dated: June 27, 2013                       /s/ Stephen Gardner
                                            Stephen Gardner
                                            *Attorney for Plaintiffs and the Proposed Class*