UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDITH JANNEY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GENERAL MILLS,<br><br>    Defendant. | Case No. 12-cv-03919-WHO<br><br>**ORDER DENYING MOTION TO STAY**<br><br>Re: Dkt. No. 66 |

# INTRODUCTION

Plaintiffs Judith Janney and Amy McKendrick bring this putative class action against defendant General Mills, Inc., asserting that the use of the term "Natural" on General Mills's "Nature Valley" products (the "products") is deceptive and misleading because of the presence of high fructose corn syrup ("HFCS"), high maltose corn syrup ("HMCS"), and maltodextrin. General Mills moves to stay the proceedings based on the argument that the United States Food and Drug Administration ("FDA") has primary jurisdiction over the term "natural" and two judges, including one in this district, have stayed their cases pending a response to a referral to the FDA the question of whether products with bioengineered ingredients may be labeled "natural." General Mills also argues that the Court should exercise its inherent authority to stay this case. After considering the parties' briefs and argument, and for the reasons below, General Mills's Motion to Stay is DENIED.

# BACKGROUND

The Complaint alleges the following:

Plaintiff Judith Janney "purchased Nature Valley Chewy Trail Mix Dark Chocolate & Nut Granola Bars and Nature Valley Peanut Butter Granola Thins" repeatedly for two years or more,

1  with her last purchase occurring in March 2012. Second Amended Compl. ("SAC") (Dkt. No. 59)
2  ¶¶ 16, 44 & 45. Plaintiff Amy McKendrick "purchased Nature Valley Chewy Trail Mix Fruit &
3  Nut Granola Bars, Nature Valley Sweet & Salty Nut Cashew Granola Bars, and Nature Valley
4  Dark Chocolate and Peanut Butter Granola Thins," with her last purchase occurring in February or
5  March 2012. *Id*. ¶¶ 17 & 50. They relied "on the claims that they are 'Natural.'" *Id.* ¶ 42. The
6  plaintiffs "would not have bought the [products] if they had known that they were not in fact
7  natural products." *Id.* ¶ 23.

8       The products "contain the highly processed sugar substitute HFCS, HMCS, and the
9  texturizer Maltodextrin." *Id*. ¶ 24. "HFCS and HMCS are sweeteners created from cornstarch, as
10 opposed to sugar (sucrose), which is produced from sugar cane or beets," and "[m]altodextrin is a
11 texturizer used in processed foods and is created from starch as well." *Id*. ¶¶ 26 & 27. Because
12 producing these ingredients "requires multiple processing steps in an industrial environment,
13 which transform starches into substances that are not found in nature, they cannot be described as
14 'Natural.'" *Id.* ¶ 27.

15      The "Natural" claim appears in varying forms on the fronts and backs of the products'
16 boxes, as well as on the granola bars' individual packaging. *Id.* ¶¶ 35-41. Despite a letter from
17 the plaintiffs to General Mills detailing their concerns, General Mills "has failed to change its
18 practice of including HMCS and Maltodextrin in products with 'Natural' claims."[1] *Id.* ¶ 58.

19      "Plaintiffs were attracted to the [products] because they prefer to consume all-natural
20 foods for reasons of health, safety, and environmental preservation." *Id*. ¶ 42. Additionally,
21 because of her diabetic daughter, Janney "seeks out healthier food and food that is all natural," and
22 McKendrick purchases all natural products for her daughter because she finds that "an all-natural
23 diet seems to help alleviate her daughter's behavioral issues," such as attention deficit
24 hyperactivity disorder. *Id*. ¶¶ 43 & 47. Because the plaintiffs "believe that all-natural foods
25 contain only ingredients that occur in nature or are minimally processed," these products, "with
26 their deceptive 'Natural' claims, have no value to the Plaintiffs." *Id*. ¶ 42.

---

[1] In 2010, General Mills claimed that it would phase out its use of HFCS in its products within a year. The plaintiffs do not indicate if General Mills has, in fact, done this. SAC ¶ 56.

**PROCEDURAL HISTORY**

The plaintiffs bring this putative class action on behalf of "all persons in California who bought the [products] that contained HFCS, HMCS, and Maltodextrin and were labeled 'Natural' during the period beginning four years prior to the date the original complaint was filed until the date of class certification." *Id.* ¶ 59. They bring the following causes of action: (1) violation of the California Consumers Legal Remedies Act, CAL. CIV. CODE §§ 1750 *et seq.*; (2) violation of the California Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200 *et seq.*; (3) violation of the California False Advertising Law, CAL. BUS. & PROF. CODE §§ 17500 *et seq.*; and (4) unjust enrichment.

On May 10, 2013, the Honorable Phyllis Hamilton granted in part and denied in part General Mills's Motion to Dismiss the plaintiffs' First Amended Complaint. Dkt. No. 56. In considering the motion, Judge Hamilton refused to invoke the primary jurisdiction doctrine and cited the FDA's longstanding refusal to promulgate regulations governing the use of the term "natural" and its "relative lack of interest in devoting its limited resources to what it evidently considers a minor issue" in concluding that any referral to the FDA "would likely prove futile."

On July 29, 2013, the Court related this case with two others in this district: *Bohac v. General Mills, Inc.*, No. 12-cv-5280, and *Rojas v. General Mills, Inc.*, No. 12-cv-5099.

General Mills again asks the Court to stay the case based on the primary jurisdiction doctrine and the court's inherent case-management authority. General Mills contends that a stay is especially appropriate in light of the recent referral by a judge in this district to the FDA the issue of whether products with bioengineered ingredients may be labeled "natural." *See Cox v. Gruma Corp.*, No. 12-cv-6502, 2013 WL 3828800, at *2 (N.D. Cal. July 11, 2013). General Mills also notes that a judge in the District of Colorado stayed a similar case pending a response from the FDA to the *Cox* referral. *See Van Atta v. Gen. Mills, Inc.*, No. 12-cv-2815-MSK-MJW (D. Colo. July 18, 2013).

# DISCUSSION[2]

## I. THE PRIMARY JURISDICTION DOCTRINE DOES NOT APPLY.

Judges in this district have repeatedly declined invoking the primary jurisdiction doctrine in cases asking whether the term "natural" as used on food labels is false or misleading, as the judge previously assigned to this case did here. *See Janney v. General Mills*, No. 12-cv-3919-PJH, 2013 WL 1962360, at *7 (N.D. Cal. May 10, 2013) (Hamilton, J.); *see also Kosta v. Del Monte Corp.*, No. 12-cv-1722-YGR, 2013 WL 2147413, (N.D. Cal. May 15, 2013); *Brazil v. Dole Food Co.*, No. 12-cv-1831-LHK, 2013 WL 1209955, at *10 (N.D. Cal. March 25, 2013); *Ivie v. Kraft Foods Global, Inc.*, No. 12-cv-2554-RMW, 2013 WL 685372, at *7 (N.D. Cal. Feb. 25, 2013); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898-99 (N.D. Cal. 2012) (Breyer, J.). The Court finds no reason to depart from their considered judgment.

"The [primary jurisdiction] doctrine is applicable whenever the enforcement of a claim subject to a specific regulatory scheme requires resolution of issues that are within the special competence of an administrative body." *Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 778 F.2d 1365, 1370 (9th Cir. 1985) (quotation marks omitted). "The doctrine does not, however, require that all claims within an agency's purview be decided by the agency." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006) (citation and quotation marks omitted). The Ninth Circuit has applied four non-exclusive factors identified in *United States v. General Dynamics Corp.*, 828 F.2d 1356 (9th Cir. 1987), to determine whether the doctrine applies. "Under this test, the doctrine applies where there is '(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.'" *Davel Commc'ns*, 460 F.3d at 1086 (quoting *Gen. Dynamics Corp.*, 828 F.2d at 1362).

Invocation of the doctrine is appropriate where a case "requires resolution of an issue of first impression" or when the issue is not "within the conventional experience of judges." *Brown*

---

[2] This section is substantially similar to the Discussion in the Court's Order Denying Motion to Stay in *Bohac v. General Mills, Inc.*, No. 12-cv-5280.

*v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002) (citing *Nat'l Commc'ns Ass'n. v. AT&T Corp.*, 46 F.3d 220, 222 (2d Cir. 1995)); *see also Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) ("the doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed *in the first instance* by the agency with regulatory authority over the relevant industry rather than by the judicial branch") (emphasis added). A court may decline to hear a case if it determines that the doctrine applies. *Id.* at 1088.

While issues related to food labeling are undoubtedly within the expertise of the FDA, this case does not involve a situation in which the Court should abstain from deciding the questions before it. Deciding what "natural" means is not "an issue of first impression" or one that has not been addressed "in the first instance" by the FDA. *Brown*, 277 F.3d at 1172; *Clark*, 523 F.3d at 1114. As General Mills itself concedes, "the FDA has adopted a policy for use [of] the word 'natural' on food labels, one that it enforces through administrative action." Br. (Dkt. No. 66) at 12. It quotes the FDA as stating that "natural" means "that nothing artificial or synthetic . . . has been included in, or has been added to, a food that would not normally be expected to be in the food." Br. 9-10 (internal quotation marks omitted). Given the amount of attention that the FDA has apparently directed towards the issue before the Court, "there is no such risk of undercutting the FDA's judgment and authority by virtue of making independent determinations on issues upon which there are no FDA rules or regulations (or even informal policy statements).'" *Brazil*, 2013 WL 1209955, at *10 (citation and quotation marks omitted).

Determining whether a term is false or misleading is within the province of the courts. "[A]llegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading." *Jones*, 912 F. Supp. 2d at 898-99 (citations and internal quotation marks omitted). This case primarily requires asking whether a "reasonable consumer" would be misled by the challenged statements—what a "reasonable consumer" thinks does not involve answering technical questions or scientific expertise. *See Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010) ("plaintiffs advance a relatively straightforward claim: they assert that defendant has violated FDA regulations and

marketed a product that could mislead a reasonable consumer. As courts faced with state-law challenges in the food labeling arena have reasoned, this is a question courts are well-equipped to handle.") (citation and quotation marks omitted). Of course, the FDA's views are "relevant to the issue of whether these labels could be deceptive or misleading to a reasonable consumer," *Ivie*, 2013 WL 685372, at *12, but they are not the sole or dispositive factor. The questions to be decided here are squarely within "the conventional experience of judges." *Brown*, 277 F.3d at 1172.

The *General Dynamics* factors do not help General Mills. "Without question, the FDA has extensively regulated food labeling in the context of a labyrinthine regulatory scheme." *Chacanaca*, 752 F. Supp. 2d at 1124. Answering the questions of whether the food labeling in question is false or misleading, however, does not require the FDA's expertise and "uniformity in administration" by the FDA does not weigh in favor of abstaining. *Davel Commc'ns*, 460 F.3d at 1086. As Judge Hamilton's earlier Order in this case concluded, "the FDA has signaled a relative lack of interest in devoting its limited resources to what it evidently considers a minor issue, or in establishing some 'uniformity in administration' with regard to the use of 'natural' in food labels."[3] *Janney*, 2013 WL 1962360, at *7; *see also Jones*, 912 F. Supp. 2d at 898 ("The FDA's inaction with respect to the term 'natural' implies that the FDA does not believe that the term 'natural' requires 'uniformity in administration.'").

The Ninth Circuit has made clear that not "all claims within an agency's purview [must] be decided by the agency." *Davel Commc'ns*, 460 F.3d at 1086. Janney's "claims do not necessarily implicate primary jurisdiction, and the FDA has shown virtually no interest in regulating" the term "natural." *Cf. Chavez v. Nestle USA, Inc.*, 511 Fed. App'x 606, 607 (9th Cir. 2013) (discussing primary jurisdiction doctrine as applied to DHA). After considering these factors, and because this case is neither an issue of first impression for the FDA nor a particularly complicated issue

---

[3] General Mills argues that deferring to the FDA will not be futile this time because two cases involving the term "natural" have now been stayed on primary jurisdiction grounds. Given the litany of cases in this area over the years, however, the Court is skeptical that the FDA will develop a policy regarding the term "natural" anytime soon, especially since it has considered the matter for over two decades but still has not provided further guidance. *See Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1033 (N.D. Cal. 2009) (Breyer, J.).

inappropriate for a court to address, the Court declines to invoke the primary jurisdiction doctrine as many other courts addressing the same or similar issues have declined to do.

General Mills argues that deciding this issue "without the FDA's input, would risk usurping the FDA's interpretive authority and undermining, through private litigation, the FDA's considered judgments." Br. 5 (quoting *Cox v. Gruma Corp.*, No. 12-cv-6502, 2013 WL 3828800 (N.D. Cal. July 11, 2013) (internal quotation marks and brackets omitted). The Court notes that the *Cox* referral involves "the question of whether and under what circumstances food products containing ingredients produced using *bioengineered seed* may or may not be labeled 'Natural' or 'All Natural' or '100% Natural.'" 2013 WL 3828800, at *2 (emphasis added). In other words, the referral is limited to the issue of whether *genetically modified organisms* are natural, which are not the same ingredients at issue here—the FDA is not being asked to broadly define the term "natural." Thus, it is unclear why the Court must await the FDA's opinion on that question. In any event, as General Mills itself admits, "the FDA has adopted a policy for use [of] the word 'natural' on food labels, one that it enforces through administrative action." Br. 12. As discussed above, the issues presented are not ones of first impression for the FDA—the Court is not wading into uncharted waters. Deciding this case does not mean that the Court shows no deference to the agency; on the contrary, the views expressed by the agency thus far, even if informal, would likely be highly relevant to the Court's determinations. Thus, the Court would not "risk usurping the FDA's interpretive authority and undermining, though private litigation, the FDA's considered judgments" by hearing this case.

*Astiana v. Hain Celestial Group, Inc.*, 2012 WL 5873585 (N.D. Cal. Nov. 19, 2012)—a case about the use of the term "natural" in cosmetics—is distinguishable from the facts at hand. As one judge in this district explained, *Astiana* "is inapposite because, unlike cosmetics, the FDA has provided informal policy guidance stating the minimum standards for using the term "natural" with respect to food products . . . ." *Kosta*, 2012 WL 5873585, at *9. Indeed, in declining to invoke the primary jurisdiction doctrine in her order in this case, Judge Hamilton—the judge in *Astiana*—explained that "the issuance of the informal 'policy' [concerning the term 'natural' with regard to food], or its citation by the FDA when it chooses to do so, suggests that the FDA does

7

have a position of sorts—unlike the situation in *Astiana*, where the FDA had issued no guidance whatsoever, even informal policy statements, regarding the use of the term 'natural' on cosmetics packaging." *Janney*, 2013 WL 1962360, at *7. Given the FDA's guidance on food labeling to date, there is little risk of improperly invading the FDA's primary jurisdiction by hearing this case.

## II. THE COURT DECLINES TO EXERCISE ITS DISCRETION TO STAY.

General Mills argues that the Court should exercise its inherent discretion to stay the case. A district court has broad discretion to stay proceedings pending before it "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The power to stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55. "Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 269 (9th Cir. 1962).

These factors do not weigh in favor of a stay. General Mills argues that a three-month stay is modest and will not harm any party, but for the same reason, any harm from proceeding (primarily, the cost of beginning discovery) is also relatively modest. Outweighing that is the likelihood that the FDA will not respond to the referral in *Cox* in a meaningful way, given both the FDA's history of how it has addressed this issue and the multiplicity of other issues that command the FDA's attention. Accordingly, the orderly course of justice will be harmed by a stay: the likely outcome is that in three months, either General Mills will return to seek a further stay from the Court or three months of case development will have been delayed. Federal Rule of Civil Procedure 1 emphasizes the importance of the "just, speedy, and inexpensive determination of every action and proceeding," and a stay in this case is more likely to delay justice, slow the resolution of the matter, and make this litigation more expensive in the long run than simply moving forward with it. No one knows how the FDA will respond, if it responds at all, so the initial discovery sought by the plaintiffs might be relevant regardless. Balancing the potential cost

to General Mills of commencing discovery against the delay caused by a stay and the likelihood that the FDA will not definitively and timely resolve the question presented to it, as Judge Hamilton thoroughly discussed in her Order, the Court declines to exercise its discretion to stay this case.

## CONCLUSION

For the reasons above, General Mills's Motion to Stay is DENIED.

**IT IS SO ORDERED.**

Dated: October 10, 2013

_____
WILLIAM H. ORRICK
United States District Judge