UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUDITH JANNEY, et al.,

        Plaintiffs,

    v.

GENERAL MILLS,

        Defendant.

Case No. 12-cv-03919-WHO

**ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS**

Re: Dkt. No. 85

Plaintiffs Judith Janney and Amy McKendrick bring this putative California class action against defendant General Mills, Inc., asserting that the terms "Natural" and "100% Natural" on General Mills's "Nature Valley" products (the "products") are deceptive and misleading because of the presence of high fructose corn syrup ("HFCS"), high maltose corn syrup ("HMCS"), and maltodextrin. Second Amended Complaint ("SAC") ¶¶ 1, 24, 36-41. To resolve General Mills's motion for judgment on the pleadings under Federal Rule of civil Procedure 12(c), I must resolve whether the plaintiffs' claims that they were deceived by the terms "Natural" and "100% Natural" meets the "reasonable consumer" standard. Because the plaintiffs have plausibly alleged that General Mills's representations about its products are factual and not merely puffery, on most issues I DENY the motion to dismiss. For the reasons described later, I will GRANT the motion with respect to the unjust enrichment claim.

## FACTUAL BACKGROUND

Plaintiff Judith Janney "purchased Nature Valley Chewy Trail Mix Dark Chocolate & Nut Granola Bars and Nature Valley Peanut Butter Granola Thins" repeatedly for two years or more, with her last purchase occurring in March 2012. Second Amended Compl. ("SAC") (Dkt. No. 59) ¶¶ 16, 44 & 45. Plaintiff Amy McKendrick "purchased Nature Valley Chewy Trail Mix Fruit & Nut Granola Bars, Nature Valley Sweet & Salty Nut Cashew Granola Bars, and Nature Valley

Dark Chocolate and Peanut Butter Granola Thins," with her last purchase occurring in February or March 2012. *Id.* ¶¶ 17 & 50. They relied "on the claims that they are 'Natural.'" *Id.* ¶ 42. The plaintiffs "would not have bought the [products] if they had known that they were not in fact natural products." *Id.* ¶ 23.

The products "contain the highly processed sugar substitute HFCS, HMCS, and the texturizer Maltodextrin." *Id.* ¶ 24. "HFCS and HMCS are sweeteners created from cornstarch, as opposed to sugar (sucrose), which is produced from sugar cane or beets," and "[m]altodextrin is a texturizer used in processed foods and is created from starch as well." *Id.* ¶¶ 26 & 27. Because producing these ingredients "requires multiple processing steps in an industrial environment, which transform starches into substances that are not found in nature, they cannot be described as 'Natural.'" *Id.* ¶ 27.

The "Natural" and "100% Natural" claim appears on the fronts and backs of the products' boxes, as well as on the granola bars' individual packaging. *Id.* ¶¶ 35-41. Despite a letter from the plaintiffs to General Mills detailing their concerns, General Mills "has failed to change its practice of including HMCS and Maltodextrin in products with 'Natural' claims." *Id.* ¶ 58.

"Plaintiffs were attracted to the [products] because they prefer to consume all-natural foods for reasons of health, safety, and environmental preservation." *Id.* ¶ 42. Additionally, because of her diabetic daughter, Janney "seeks out healthier food and food that is all natural," and McKendrick purchases all natural products for her daughter because she finds that "an all-natural diet seems to help alleviate her daughter's behavioral issues," such as attention deficit hyperactivity disorder. *Id.* ¶¶ 43 & 47. Because the plaintiffs "believe that all-natural foods contain only ingredients that occur in nature or are minimally processed," these products, "with their deceptive 'Natural' claims, have no value to the Plaintiffs." *Id.* ¶ 42.

The plaintiffs bring this putative class action on behalf of "all persons in California who bought the [products] that contained HFCS, HMCS, and Maltodextrin and were labeled 'Natural' during the period beginning four years prior to the date the original complaint was filed until the date of class certification." *Id.* ¶ 59. They bring the following causes of action: (1) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (2)

violation of the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200 *et seq.*; (3) violation of the California False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE §§ 17500 *et seq.*; and (4) unjust enrichment.

### PROCEDURAL HISTORY

On May 10, 2013, Judge Hamilton granted in part and denied in part General Mills's Motion to Dismiss the plaintiffs' First Amended Complaint. On July 29, 2013, the Court related this case with two others in this district: *Bohac v. General Mills, Inc.*, No. 12-cv-5280, and *Rojas v. General Mills, Inc.*, No. 12-cv-5099. The plaintiffs filed the Second Amended Complaint on June 27, 2013. General Mills filed its motion for judgment on the pleadings on December 13, 2013, and I heard oral argument on March 19, 2014.

### LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) utilizes the same standard as motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Either motion may be granted only when it is clear that "no relief could be granted under any set of facts that could be proven consistent with the allegations." *McGlinchy v. Shull Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) (citations omitted). Dismissal may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F. 2d 530, 534 (9th. Cir. 1984).

A complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the Court must accept as true the well-pled facts in a complaint, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to

relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).

DISCUSSION

## I.  THE PLAINTIFFS HAVE SUFFICIENTLY PLEADED THAT THEIR CLAIMS MEET THE REASONABLE CONSUMER STANDARD

### A.  A Reasonable Consumer Could Plausibly Be Deceived By The Products' "100% Natural" Labeling

General Mills asserts that judgment should be entered on the SAC against plaintiffs because their claims do not meet the "reasonable consumer" standard, which governs claims under California's UCL, FAL, and CLRA.  *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer." (citation omitted).  Under the reasonable consumer standard, a plaintiff must "show that 'members of the public are likely to be deceived.'"  *Freeman*, 68 F.3d at 289 (quoting *Bank of West v. Superior Court*, 2 Cal.4th 1254, 1267 (1992)). "Advertisements that amount to 'mere' puffery are not actionable because no reasonable consumer relies on puffery.  Factual representations, however, are actionable."  *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007) (citations omitted).

Whether a business practice is deceptive is generally a question of fact not amenable to determination on a motion to dismiss.  *Id.*  However, in certain situations a court may assess, as a matter of law, the plausibility of alleged violations of the UCL, FAL, and CLRA.  *See, e.g., Werbel ex rel. v. Pepsico, Inc.*, No. 09-cv-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (plaintiff failed to establish that a reasonable consumer would likely be deceived into believing that cereal named "Crunch Berries" derived nutritional value from fruit).

This is not the rare situation in which granting a motion to dismiss is appropriate.  The front of the Nature Valley products' packaging prominently displays the term "100% Natural" that could lead a reasonable consumer to believe that the products contain only natural ingredients. These words are reinforced by the word "Natural" on the products' boxes and individual wrappers. Together, these representations could easily be interpreted by consumers as a claim that *all* of the

ingredients in the products are natural, which appears to be false because they allegedly contain the unnatural ingredients high fructose corn syrup, high maltose corn syrup, and maltodextrin. Taking these allegations as true and construing them in the light most favorable to the plaintiffs, the SAC adequately alleges that the representations on the products' labeling could plausibly deceive a reasonable consumer.

Courts have found similar claims challenging the terms "all natural" and "natural" to be sufficient basis for a cause of action under California's consumer protection laws. *See Williams v. Gerber Products Co*., 552 F.3d 934, 939 (9th Cir. 2008) ("the statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false."); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1080 ("plaintiffs allege that they were deceived by the labeling of defendant's drink products as 'All Natural' because they did not believe that the products would contain HFCS [high fructose corn syrup] . . . . plaintiffs have stated a plausible claim that a reasonable consumer would be deceived by defendant's labeling."); *Jou v. Kimberly-Clark Corp*., 13-03075 JSC, 2013 WL 6491158, at *5-8 (N.D. Cal. Dec. 10, 2013) (finding that the words "pure & natural," could lead a reasonable consumer to believe that that the product is free of non-natural ingredients when it actually contains polypropylene and sodium polyacrylate); *Wilson v. Frito–Lay N. Am., Inc.*, No. 12-cv-1586 SC, 2013 WL 1320468, at *12–13 (N.D. Cal. Apr. 1, 2013) ("[T]he Court finds that Plaintiffs have adequately pled that a reasonable consumer could interpret a bag of chips claiming to have been 'Made with ALL NATURAL Ingredients' to consist exclusively of natural ingredients, contrary to the reality described in the nutrition box."); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-cv-4387 PJH, 2011 WL 2111796, at *3-4 (N.D. Cal. May 26, 2011) (denying motion to dismiss similar claims regarding "all natural" bean dip that contains transfats); *Hitt v. Ariz. Beverage Co., LLC*, No. 08–cv–809 WQH, 2009 WL 449190, at *6-7 (S.D. Cal. Feb. 4, 2009) (denying defendant's motion to dismiss the plaintiff's UCL, FAL, and CLRA claims where the plaintiff alleged that a reasonable consumer would find the "All Natural" labeling on the defendant's drink products, which contained high fructose corn syrup, deceptive).

5

Accordingly, I cannot conclude as a matter of law in the context of a Rule 12(b)(6) motion that no reasonable consumer would not be deceived by the "100% Natural" and "Natural" representations on Nature Valley products' labels.

**B. The Terms "100% Natural" and "All Natural" are Not Mere Puffery**

General Mills's primary contention is that a claim based on the words "Natural" or "100% Natural" is not actionable because Janney and McKenrick and the plaintiffs in two other related cases in this district, *Bohac v. General Mills, Inc.*, No. 12-cv-5280, and *Rojas v. General Mills, Inc.*, No. 12-cv-5099, have "individualized and subjective definitions of the term 'natural'" which "depend[] on their own individual and idiosyncratic expectations for the products." Mtn. 9.[1]

General Mills asks the Court to look beyond the four corners of the complaint and dismiss it based on allegations made by other plaintiffs in other actions. This is not permitted. General Mills is limited to facts alleged in the complaint and to matters that may be judicially noticed. It has not asked that I judicially notice the complaints in *Rojas* and *Bohac*. *See* Dkt. No. 86, General Mills' Request for Judicial Notice. More significantly, it cites no support for its assumption that plaintiffs in related cases must assert the same theories of liability. To the extent General Mills relies on *Astiana v. Kashi*, 2013 WL 3943265, at *13 (S.D. Cal. Jul. 30, 2013), for the proposition that multiple plaintiffs' lack of a uniform definition of "natural" requires dismissal on a Rule 12(b)(6) motion, that argument is rejected since *Astiana* was decided on a class certification motion based on evidence produced in that case beyond the pleadings. The only allegations at issue here are those set forth by the plaintiffs in the SAC.

General Mills cites several cases in support of its argument that "subjective statements are non-actionable under California's consumer protection laws." *See* Mtn. 9 (citing *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) ("original" and "classic" non-actionable); *Edmundson v. The Procter & Gamble Co.*, 2013 WL 435434, at *1 (9th Cir.

---

[1] The plaintiff in *Bohac* asserts that the use of the term "natural" on the products is misleading because of the presence of GMOs as well as 11 other ingredients such as sodium bicarbonate, soy lecithin, high fructose corn syrup, and maltodextrin. Bohac Amended Class Action Complaint ¶¶ 23-47. The plaintiff in *Rojas* exclusively targets GMOs and alleges that Nature valley products are not "natural" because they contain ingredients that are GMO-based. *Rojas* Second Amended Complaint ¶¶ 12, 39, 62-64.

2013) ("patented blade coating for incredible comfort" non-actionable"); *Viggiano v. Hansen Natural Corp.*, No. 12-cv-10747 MMM, 2013 WL 2005430, at *11 n.42 (C.D. Cal. May 13, 2013) ("premium all-natural flavors" non-actionable); *Elias v. Hewlett Packard Co.*, No. 12-cv-00421–LHK, 2013 WL 3187319, at *10 (N.D. Cal. Jun. 21, 2013) ("ultra-reliable" and "packed with power," nonactionable); *Fraker v. KFC Corp.*, 2006 U.S. Dist. LEXIS 79049, at *9-11 (S.D. Cal. Oct. 19, 2006) ("highest quality ingredients," "balanced diet plan," and "part of a sensible diet" non-actionable )).  In each of these cases, the courts found that the challenged misrepresentations were the type of "generalized, vague, and unspecified assertions" that constitute "mere puffery" and "upon which a reasonable consumer could not rely."  *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003).  *See, e.g., Viggiano*, 944 F. Supp. 2d at 894 ("The term 'premium,' . . . is mere puffery; it has no concrete, discernable meaning in the diet soda context"); *Carrea*, 475 F. App'x at 115 ("It is implausible that a reasonable consumer would interpret 'Original Sundae Cone,' 'Original Vanilla,' and 'Classic,' to imply that Drumstick is more wholesome or nutritious than competing products . . . the presence of 'original' or 'classic' ingredients alone does not plausibly imply that a product is more nutritious than other desserts.  In addition, no reasonable consumer is likely to think that 'Original Vanilla' refers to a natural ingredient . . . .").

The Court may determine as a matter of law whether a statement is puffery.  *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) ("District courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and we can think of no sound reason why they should not do so.").  Courts analyzing whether a statement constitutes puffery examine whether the statements are general assertions that say nothing about the specific characteristics or components of the products or whether they are specific factual assertions.  "The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions.  Advertising which merely states in general terms that one product is superior is not actionable.  However, misdescriptions of specific or absolute characteristics of a product are actionable."  *Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246

(citing *Smith-Victor Corp. v. Sylvania Elec. Products, Inc.*, 242 F. Supp. 302, 308-09 (N.D. Ill. 1965) (advertiser's statement that its lamps were "far brighter than any lamp ever before offered for home movies" was ruled puffery. However, when the advertiser quantified numerically the alleged superior brightness with statements such as "35,000 candle power and 10–hour life," the court found a potential Lanham Act claim)).

Here, the alleged misrepresentations of "100% NATURAL" and "Natural" are not merely general in nature. The statements convey the affirmative and specific factual representation that the products are made *entirely* of natural ingredients. This is consistent with the plaintiffs' claim that they read the label representations to mean that the products contain no artificial or synthetic ingredients. General Mills contends that its marketing is non-actionable puffery because "a reasonable consumer would be aware that Nature Valley granola bars are not 'found in nature' and are processed in an industrial environment." General Mills' misunderstands Janney's and McKendrick's allegations, which assert that consumers would likely be misled in believing that "natural" means the products have no artificial or synthetic ingredients--not that granola bars "are fruits of the earth." *Jou*, 2013 WL 6491158, at *8 (dismissing similar argument that "'reasonable consumers know' that the term 'natural' 'is not a literal description of the Products, since diapers and wipes do not spring directly from the ground or grow on trees.'"). As discussed above, several courts have found the terms "all natural" and "natural" to be potentially deceptive and actionable statements when used in products that contain GMOs and highly processed ingredients. It is plausible that a reasonable consumer would interpret these statements as specific factual claims upon which he or she could rely.

General Mills also asserts that "Natural" is mere puffery because the Federal Trade Commission ("FTC") has declined to provide "general guidance" on the use of that term. *See* 75 Fed. Reg. 63552 (2010). As the FTC explained, it did not provide guidance because it lacked "consumer perception evidence indicating how consumers understand the term 'natural.'" *Id.* In addition, the FTC noted that "natural may be used in numerous contexts and may convey different meanings depending on that context." *Id.* But far from deeming "natural" mere non-actionable puffery, the FTC statement goes on to explicitly warn marketers that the use of "natural" may be

8

deceptive:

> Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact. Similarly, if, in a given context, a natural claim is perceived by reasonable consumers as a general environmental benefit claim or as a comparative claim (e.g., that the product is superior to a product with synthetic ingredients), then the marketer must be able to substantiate that claim and all attendant reasonably implied claims.

*Id.*

Defendant's reliance on *Pelayo v. Nestle USA, Inc.*, 2013 WL 5764644 (C.D. Cal. Oct. 25, 2013) is also unpersuasive. The plaintiff in *Pelayo* alleged that the term "all natural" on Buitoni's products was false and misleading because they contained at least two ingredients that were unnatural. The court found that the plaintiff failed to state a claim under the UCL and CLRA because she offered "several conflicting definitions" of the term "natural." Id. at *4. As the court explained:

> Plaintiff offers the Webster's Dictionary definition of "natural," meaning "produced or existing in nature" and "not artificial or manufactured." However, even Plaintiff admits that this definition clearly does not apply to the Buitoni Pastas because they are a product manufactured in mass, and the reasonable consumer is aware that Buitoni Pastas are not "springing fully-formed from Ravioli trees and Tortellini bushes."

> The other definitions of "natural" offered by Plaintiff are equally implausible. In another attempt to define "natural," Plaintiff alleges that none of the ingredients in a "natural" product are "artificial" as that term is defined by the Food and Drug Administration ("FDA"). *See* 21 C.F.R. § 101.22(a)(1). With respect to Buitoni Pastas, Plaintiff alleges that xanthan gum, soy lecithin, sodium citrate, maltodextrin, sodium phosphate, disodium phosphates, and ferrous sulfate (collectively, the "Challenged Ingredients") are "unnatural, artificial and/or synthetic ingredients." However, Plaintiff fails to allege that any of the Challenged Ingredients in Buitoni Pastas are "artificial" as defined by the FDA. In addition, the FDA definition of "artificial" applies only to flavor additives, and Plaintiff also fails to allege that any of the Challenged Ingredients in Buitoni Pastas are present in the product specifically as an added "flavor." Therefore, this definition of "natural" is clearly not applicable in this case.

> In her final failed attempt to offer a plausible definition, Plaintiff alleges that none of the ingredients in a "natural" product are "synthetic" as that term is defined by the National Organic Program ("NOP"), which regulates products labeled as "organic." However, because Buitoni Pastas are not labeled as "organic," the definition of "synthetic" under the NOP does not apply

*Id.* at *4-5 (citations omitted).

In contrast, the plaintiffs here have offered one definition of "natural." *See* SAC ¶ 3 ("The term 'Natural' only applies to those products that contain no artificial or synthetic ingredients and consist entirely of ingredients that are only minimally processed."); Opp. 2 (same). General Mills does not assert that this definition of "natural" is inapplicable or contradicted by federal regulation. Therefore, *Pelayo* is distinguishable on the facts. Furthermore, I decline to follow the analysis in *Pelayo* and find persuasive the decisions cited above where courts found the words "all natural" and "natural" to be actionable. As one judge in this district who declined to follow *Pelayo* wrote, *Pelayo's* holding "is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit." *Jou*, 2013 WL 6491158, at *8 (N.D. Cal. Dec. 10, 2013).

## C. General Mills May Not Rely on the Products' Ingredient List to Correct Labeling Misrepresentations

General Mills contends that the ingredients list on the product packaging clears up any possible misconception by identifying which ingredients in the products are not natural. Mtn. 12-16. Specifically, General Mills contends that "any ambiguity about what ingredients were in the products is dispelled by a review of the labels themselves." Mtn. 14.

The Ninth Circuit has already rejected the argument that "reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams*, 552 F.3d at 939-40 ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging."). Judges in this district have applied *Williams* in rejecting the argument that the "natural" representations on the front of the packaging must be viewed in combination with the back of the packaging to resolve any "ambiguity." *See Wilson*, 2013 WL 1320468, at *12–13 ("the Court finds that Plaintiffs have adequately pled that a reasonable consumer could interpret a

bag of chips claiming to have been 'Made with ALL NATURAL Ingredients' to consist exclusively of natural ingredients, contrary to the reality described in the nutrition box.  Even though the nutrition box could resolve any ambiguity, the Court cannot conclude . . . that no reasonable consumer would be deceived by the 'Made with ALL NATURAL Ingredients' labels.") (citations omitted); *Jou*, 2013 WL 6491158, at *8-9 ("Defendant cannot rely on disclosures on the back or side panels of the packaging to contend that any misrepresentation on the front of the packaging is excused.").  As I have already explained, Janney and McKendrick have alleged facts that plausibly suggest that a reasonable consumer would be misled into believing that the terms "100% NATURAL" and "all natural" mean that the products contain no non-natural ingredients.  General Mills cannot rely on the ingredients list to cure that alleged misrepresentation.

Further, the other cases on which General Mills relies to distinguish *Williams* are inapposite.  *See Hairston v. S. Beach Beverage Co., Inc.*, 12-cv-1429-JFW, 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012), (finding *Williams* distinguishable where the phrase "all natural with vitamins" was consistent with the ingredient label, because label did "not simply state that it is 'all natural' without elaboration or explanation.  Instead, the 'all natural' language is immediately followed by the additional statement 'with vitamins' or 'with B vitamins.'"); *Gitson v. Trader Joe's Co.*, 13-cv-01333-WHO, 2013 WL 5513711, at *6-7 (N.D. Cal. Oct. 4, 2013) (reasonable consumer could not be misled that soy milk offered the same qualities as cow's milk because the label stated LACTOSE & DAIRY FREE on its front and back); *Simpson v. Kroger Corp.*, 219 Cal. App. 4th 1352 (2013) (labels describing products as "butter" and "spreadable butter" not misleading where top of product packaging clearly stated "WITH CANOLA OIL"); *Kane v. Chobani, Inc.*, 12-cv-02425-LHK, 2013 WL 5289253, at *10 (N.D. Cal. Sept. 19, 2013) (court dismissed allegation that "all natural" statement was misleading because yogurts are colored artificially using fruit or vegetable juice concentrate because label discloses that defendant added "fruit or vegetable juice concentrate [for color ]").

In each of those cases, the challenged misrepresentations are explicitly disclaimed or modified by other words in the same general location on the label. The Nature Valley products'

labels, however, do not contain any language disclaiming or qualifying the "100% NATURAL" and "all natural" misrepresentations. They do not indicate that some of the ingredients are not natural. And, contrary to General Mills' assertion, I fail to see how the ingredients list necessarily informs the consumer that the products include non-natural ingredients. At the pleading stage, I will not conclude as a matter of law that a reasonable consumer should be expected to know that the ingredients high fructose corn syrup, high maltose corn syrup, and maltodextrin are not natural. The mere presence of these ingredients in the ingredients list does not clearly refute the explicit message that reasonable consumers may take from the rest of the packaging: that the products are made with *only* natural ingredients. *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1105 (N.D. Cal. 2012) (consumer is not required to look to ingredients list to determine true contents of the product).

Accordingly, I DENY General Mills's motion to dismiss with respect to the plaintiffs' UCL, CLRA, and FAL claims.

## II. UNJUST ENRICHMENT

General Mills moves to dismiss the plaintiffs' Fourth Cause of Action for Unjust Enrichment. Mtn. 18 n.5. California does not recognize "unjust enrichment" as a separate cause of action. *See Ang*, 2013 WL 5407039, at *11 (citing cases). Therefore I DISMISS this claim with prejudice.

### CONCLUSION

General Mills's motion for judgment on the pleadings is DENIED as to the plaintiffs' First, Second, and Third Causes of Action for violations of the CLRA, UCL, and FAL. The motion is GRANTED without leave to amend as to plaintiffs' Fourth Cause of Action for unjust enrichment. General Mills shall answer the SAC within 20 days.

**IT IS SO ORDERED**.

Dated: March 26, 2014

WILLIAM H. ORRICK
United States District Judge

12